PALMER v. UNEMPLOYMENT COMPENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—CONTROL OF MEMBERS OF ORCHESTRA—FINDING OF APPEAL BOARD—EVIDENCE.

Evidence showing that plaintiff ballroom owners contracted with orchestra leaders and paid them lump sums of money for services of entire orchestras and the leaders had supervision and control over their respective orchestra members, amounts paid

to them and selection of music played justified finding of appeal board of State unemployment compensation commission that the leader had sole control and supervision over its members (Act No. 1, § 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

2. SAME—DECISION OF APPEAL BOARD—GREAT WEIGHT OF EVIDENCE.

The decision of the appeal board of the State unemployment compensation commission may not be reversed by the circuit court upon a question of fact if it is not found that such decision is contrary to the great weight of the evidence (Act No. 1, § 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

3. SAME—REVIEW.

Case on review by Supreme Court by way of certiorari to appeal board of the State unemployment compensation commission from the circuit court where questions of law and fact were inquired into is considered under the statute as a general appeal (Act No. 1, § 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

4. SAME—EMPLOYMENT RELATION.

The relationship of employer and employee must exist in order to establish authority to tax for unemployment compensation (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

5. SAME—BALLROOM    OWNERS—ORCHESTRAS—EMPLOYMENT    RELATIONS.

Ballroom owners who hired services of many leading orchestras, either directly through leader or through a booking agency, where the regulations of the musician's union were required to be considered a part of the contract and orchestra leader had control of his orchestra, music to be played and distribution of compensation, were not "employers" under the unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

6. COSTS—PUBLIC QUESTION—BALLROOM OWNER'S LIABILITY FOR UNEMPLOYMENT COMPENSATION ASSESSMENTS FOR SERVICES OF ORCHESTRAS.

No costs are allowed in ballroom owners' review of proceeding against them for assessments under the unemployment compensation act on gross amounts paid for services of orchestras, a public question being involved (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

Appeal from Ingham; Hayden (Charles H.), J. Submitted October 11, 1944. (Docket No. 11, Calendar No. 42,529.) Decided February 20, 1945.

Certiorari by Joseph V. Palmer and wife, doing business as The Dells, to review a decision of the appeal board of the Michigan Unemployment Compensation Commission determining that plaintiffs were liable for assessments on wages of members of orchestras which played in their beer tavern and ballroom. Judgment for defendant. Plaintiff appeals. Reversed.

*Pierce, Planck & Ramsey,* for plaintiffs.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Florence Clement Booth,* Assistants Attorney General, for defendant.

Butzel, J. The question raised in this appeal is whether the word "employer" as used in the Michigan unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937 [Comp. Laws Supp. 1937, § 8485–41 *et seq.,* Stat. Ann. 1938 Cum. Supp. § 17.501 *et seq.*) applies to plaintiffs under the particular facts in the instant case.

A petition for certiorari was filed by plaintiffs in the circuit court for Ingham county to review questions of fact and law as determined in an order of defendant affirming assessments for unemployment compensation for the years 1938 and 1939, as based on wages consisting of gross amounts paid for services of orchestras at plaintiffs' beer tavern and ballroom, known as The Dells, near East Lansing. During 1938 and 1939, while The Dells was open

for business, it hired the services of many leading orchestras that were well known through their phonograph recordings and advertising. In 1938, seven different orchestras and in 1939 a larger number were engaged, each playing during a different period. A contract was entered into, at least in one instance, between plaintiffs and a booking agency in Detroit representing one of the orchestras, wherein plaintiffs are designated as the "employer" engaging the attraction, and the attraction agrees to perform for the plaintiffs upon certain terms. The use of the term "employer," however, was only used to designate the party engaging the attraction. The contract provided that the laws, rules and regulations of the American Federation of Musicians shall be considered a part of it. Another contract introduced into the record did not use the term "employer" but it included the clause in regard to the American Federation of Musicians. These two contracts do not indicate an employer-employee relation. The testimony, however, showed that the leader of each orchestra engaged had the supervision and control of his orchestra and the selection of the music to be played. None of the orchestras was organized for the sole purpose of filling an engagement at The Dells. In the main they were well-known orchestras that had engagements all through the country. Ninety per cent. of them did not have another engagement in Michigan during the same season and did not disband after their engagement with The Dells. The plaintiffs did not deal directly with the members of the orchestras. They had no record of their members nor any way of keeping such a record. They did not know what the individual members received. The leader had the right to change the men any time he wanted to. Plaintiffs paid the leader a lump sum of money for the serv-

ices of the entire orchestra. Supervision and control over the members of the orchestra, the amounts paid to them and the selection of the music to be played rested entirely with the leader of the orchestra. No matter how poorly the orchestra played, plaintiffs were bound to pay. If prior to playing at The Dells the personnel of the orchestra entirely changed from the time that the contract was entered into with the booking agency, plaintiffs were bound by the contract. The appeal board found that "the leader of each band had sole control and supervision over its members." However, the circuit judge found that the right of control was in the owners of the ballroom but he did not find that the finding of the appeal board was contrary to the great weight of the evidence. The decision of the appeal board may not be reversed upon a question of fact if it is not found that the decision of the appeal board is contrary to the great weight of the evidence (Section 38, unemployment compensation act). We believe that the finding of the appeal board as to the control is absolutely correct. The circuit judge based his finding upon the use of the word "employer" in the one contract, and also that this contract had a provision that the orchestra play three consecutive hours five times a week and a further statement, "Hrs. not to exceed 21." He said that The Dells could ask for this. We do not believe that the circuit judge was correct in his conclusions. The word "employer" meant the person who engaged the orchestra. The contract was indefinite as to the extra six hours which would have to be contracted for. The rules and regulations of the American Federation of Musicians were not introduced, but plaintiffs' manager stated that as a former member of the union he knew that the men of the orchestra could only look to the leader and not to plaintiffs

for compensation. The orchestras were entities in themselves before, at the time of, and after their engagements with plaintiffs. The leader was the man in charge who hired and discharged the men. How much he paid out for traveling expenses, what he paid the men or the booking agency, how much he kept for himself were known only to him.

The appeal board of the unemployment compensation commission upheld the decision of the referee holding plaintiffs liable for the assessments for the years 1938 and 1939 on all payments made to the various orchestras. On certiorari, in which the questions of law and fact may be inquired into, the circuit judge upheld the appeal board. The record is not as complete as it should have been. I believe the circuit judge was in error. Notwithstanding this case comes to us by certiorari, we will under the statute consider it as a general appeal.

In *Bert Baker, Inc., v. Ryce*, 301 Mich. 84, we held that where there was freedom from control, there was no employment within the meaning of the act. It is true that in *O'Brian* v. *Michigan Unemployment Compensation Commission*, 309 Mich. 18, we followed the ruling in *Acme Messenger Service Co.* v. *Michigan Unemployment Compensation Commission*, 306 Mich. 704, and quoted from the latter case. However, in the *O'Brian Case* there were many elements in the contracts that tended to show the men who put on the roofing for the so-called "applicators" were employees. O'Brian, the plaintiff, as merchandiser and jobber of composition roofing and siding materials, entered into a contract for furnishing materials and labor for roofing or siding for buildings. He used "applicators" to do the work. The so-called "applicators" hired their own men but it seemed rather strange to call them independent contractors when there were 77 of them hired by

plaintiff. O'Brian sometimes paid wages directly to the men who assisted the "applicators." Entries in the books for payments to the applicators were made under the heading of "labor." O'Brian loaned the applicator the necessary ladders, scaffolding and other equipment under the master contract. O'Brian employed inspectors to inspect the work done to see that it was carried out in accordance with the instructions furnished to the applicators by O'Brian. In the present case there was no control.

The question has arisen in other jurisdictions and, while some of the cases uphold appellee's contentions, we are impressed by the reasoning in *Williams v. United States* (C. C. A.), 126 Fed. (2d) 129, which construed contracts more similar to those between the plaintiffs, The Dells, and various orchestras. It was held that the relationship of employer-employee must exist in order to establish authority to tax for unemployment, and that such a relationship did not exist between the establishments plaintiff in *Williams v. United States, supra,* contracted with but it did exist between the orchestra leader and the musicians. For a more detailed statement of facts, including samples of contracts involved, see *Williams v. United States,* 38 Fed. Supp. 536, which was reversed in 126 Fed. (2d) 129, wherein it was stated:

"Notwithstanding plaintiff's insistence that the establishments had the right to hire and discharge, the court made no such finding and we are convinced there is no evidence to support such an argument. We think the record discloses without question that the right to hire and discharge was the sole prerogative of the plaintiff. The by-laws of the Federation, made a part of the contract between plaintiff and the establishments, provide:

" 'Members of the Federation are only permitted to accept, solicit or negotiate engagements to play in bands or orchestras from members who contract to furnish bands or orchestras, never from the employers or the agents of such to whom the band or orchestra is furnished.'

"Thus the sidemen were prohibited from accepting engagements with the establishments of their agents. It would seem to follow that no relation of employer and employee did or could exist between the establishments and the sidemen. By the preclusion of such relation, the right of the establishments to hire and discharge was likewise precluded."

In spite of the fact that the testimony in this *Williams Case* showed that "at times" some exercise of control was used, which is completely lacking in the present case, the court said:

"Control, so indefinite in its extent, must give way to the uncontroverted findings which lead to an opposite result. Moreover, such control as was exercised, was without right. The status of the parties was plainly fixed by the contracts, including the rules of the Federation, and there is no room for argument that the establishments had any right of control. In fact, such right was precluded by the rules of the Federation. What appears to have been control can be more aptly described as requests that certain things be done by plaintiff and the orchestra."

Hon. Charles A. Dewey, United States district judge of the southern district of Iowa, central division, filed an opinion January 5, 1945, in the case of *Bartels, et al., d. b. a. Crystal Ballroom,* and *Geer, et al., d. b. a. Larry Geer Ballrooms,* v. *Birmingham,* 59 Fed. Supp. 84 (Civil Actions Nos. 294 and 328), determining that these two ballrooms were not liable under the provisions of the Federal insurance con-

tributions act and the Federal unemployment tax act in respect to wages paid members of the orchestras playing in the establishments. The orchestras who had played at these halls included Jimmy Barnett and his orchestra, which is one of the units named in the present case. The contracts in question in the Federal case were known as ''Form B'' contracts, of which the court said:

''It provides * * * that the owners of the amusement establishment were the employers of the leaders and the individual members of the orchestras, but added the provision that it was an employment by the owner for the personal services of the employees as musicians severally, and that '' 'The employer shall at all times have complete control of the services which the employees will render under the specifications of this contract.' ''

The court elucidates that while the litigation of *Williams* v. *United States* (C. C. A.), 126 Fed. (2d) 129, was pending:

''The American Federation of Musicians had prepared and sent to each local of the musician's union a suggested contract known as Form B, together with a letter from the president of that union stating that it must be used for all engagements after June 1, 1941, and that it had been adopted by the international executive board 'for the purpose of protecting our members under the social security laws.' ''

Here the court held that the ballrooms were not the employers of the band leaders and sidemen:

''It is the contention of the government and the interveners that these contracts (Form B) are conclusive of an employer-employee relationship. I cannot agree. It may be an element that may be

considered by the fact finder if of any assistance in determining what is the true relationship.

"The leading case on the subject of the conclusive effect of such contracts is perhaps *Griffiths* v. *Commissioner of Internal Revenue*, 308 U. S. 355, 358 (60 Sup. Ct. 277, 84 L. Ed. 319), wherein that court said:

" 'Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed. * * * Taxes cannot be escaped "by anticipatory arrangements and contracts however skilfully devised." '

"And in *Moline Properties, Inc.,* v. *Commissioner of Internal Revenue*, 319 U. S. 436, 439 (63 Sup. Ct. 1132, 87 L. Ed. 1499), it is said:

" 'In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal.'

"And there are authorities holding that, in tax matters, the courts are not interested in the terminology of the contract but that they look to the true situation to see whether there is in fact an employer-employee relationship or the relationship of an independent contractor."

While the laws that were construed in these cases differed from the unemployment compensation law of Michigan, they do show that it was not the employer-employee relationship between members of the orchestras and the parties who contracted for the music. If the theory of defendant is correct, it might apply to proprietors of theatres, of auditoriums, et cetera, who engaged various attractions during the year.

The order entered by the trial court should be reversed and the case remanded to the Michigan Unemployment Compensation Commission for entry of an order setting aside the assessments against plain-

tiffs because of the amounts paid to orchestras during the years in question. A public question being involved, no costs will be allowed.

STARR, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.