TRINITY BUILDING CORPORATION OF NEW YORK *vs.*
RHODE ISLAND UNEMPLOYMENT COMPENSATION BOARD *et al.*

FEBRUARY 17, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.  This petition for certiorari was brought by a hotel corporation to have this court review and quash the decision of the respondent board denying the petitioner's application for a refund of certain contributions made by it under the unemployment compensation act, general laws 1938, chapter 284, as amended, and now known as the employment security act.  Public laws 1949, chap. 2175. Pursuant to the writ the pertinent records have been certified by the respondents to this court.

From such records the following facts appear.  The petitioner is a foreign corporation which owns and operates the Sheraton-Biltmore Hotel in the city of Providence. The respondents are members of the unemployment compensation board created by the above-cited act, together with the successor administrator thereof by virtue of a later amendment.  The petitioner by purchase acquired all the title and rights of the previous owner and operator in and to the hotel.  On March 23, 1942 the respondent board found that the musicians of the name bands or orchestras which played from time to time in the Garden Room of the hotel were employees of the hotel under the

unemployment compensation act, as amended. Thereafter the previous operator of the hotel and the petitioner here made contributions accordingly to cover musicians of various orchestras playing therein over the period here involved.

On January 25, 1947 the petitioner filed an application with the board requesting a refund of contributions thus made to cover such musicians who played during the period between June 1, 1943 and September 30, 1947. After a hearing thereon that petition was denied, thereby affirming the previous order of the board entered March 23, 1942. By these orders the hotel was found to be the employer of the musicians and therefore responsible for contributions in relation thereto under the terms of the act, since the services were performed in the usual course of business at the hotel.

The petitioner appealed such decision to the superior court, where respondents' motion to dismiss was granted on jurisdictional grounds without a hearing on the merits. Thereupon the instant petition for certiorari was brought in this court to determine whether the hotel was legally an employer of these musicians under the act so as to be responsible for contributions covering such musicians between the specified dates.

The background of the engagement of such orchestras appears from the record to be substantially as follows. The hotel contracted from time to time through a booking agent with various name band or orchestra leaders, hereinafter called orchestra leaders, whereby the latter agreed to provide musicians and to play orchestral music in the Garden Room of the hotel for specified periods. All the orchestras in question were independent organizations and played only temporary engagements at the hotel extending from a minimum of ten days to a maximum of about five or six months. Under the contract the orchestra leader provided the musicians, uniforms, music, instruments and equipment with the exception, perhaps, of a piano which was supplied by the hotel.

All the contracts in question were executed on Form B, so called, which form of contract was provided by the booking agent and was required by certain musical organizations not parties to the contract as a condition to their obtaining permission to have copyright music played by the orchestra in the hotel. The hotel is described therein as the "employer" and the orchestra leader as the representative of the musicians as "employees." Other than that, however, the orchestra leader received compensation in a lump sum, which he would pay to his musicians according to their agreements with him; and he alone had the right to hire and discharge the musicians and to control not only the result but the method and means by which the services were to be rendered. Under the contract the hotel retained only a minimum right of mere direction as to the place where and the hours when the orchestra would play.

Several such orchestras played in the hotel between June 1, 1943 and September 30, 1947. All had substantially similar contracts. In most instances the names of the musicians did not appear on the form of contract and the musicians themselves did not sign it. Nor is it clear how the hotel would necessarily know from the contract the wages being paid to the musicians personally or the length of time each worked.

The petitioner contends that it was not the employer of these musicians in law or fact; that the contracts were made with the orchestra leaders as independent contractors by whom the musicians were actually employed; and, therefore, that the hotel was not a subject employer under the act and that the board erroneously held it to be responsible for contributions to cover the musician employees of the various orchestra leaders for the periods in question. It further contends that at common law it was not required to provide music for its guests; that the playing there was merely for advertising or entertainment purposes; and that even under respondents' interpretation of

the act the services should not be considered as rendered in the usual course of the hotel's business.

On the other hand the board contends that the employer-employee relationship contemplated by the act is broader than the concept of those terms or master and servant at common law; that all independent contractors for services and their servants are employees of the owner by virtue of the act; and that the owner is therefore responsible for contributions to cover all employees unless and until such an owner can exclude himself from the obligations of the act by satisfying all three exemption clauses set forth in the conjunctive in G. L. 1938, chap. 284, as amended, and as still appears in P. L. 1949, chap. 2175, sec. 3, subsections (7) (e) (1) (2) and (3).

The controlling question, therefore, is whether the musicians of the different orchestras were employees of the hotel so as to require the latter to make contributions under the terms of the unemployment compensation act, or whether they were the employees of the various orchestra leaders who were independent contractors and respectively were the real employing units under the act. We have held in effect that the act contemplates a somewhat broader relationship than the strict common-law concept of employer and employee or master and servant. *Mount Pleasant Cab Co.* v. *Rhode Island Unemployment Compensation Board,* 73 R. I. 7. But we do not think that the legislature intended to disregard entirely all the well-established concepts of the common law in that regard or to extend the terms of the act as far as the board apparently contends.

The act is in derogation of the common law and consequently a strict construction should be made in the circumstances in keeping with its proper purpose. If the board's construction thereof is correct, it would be a rare case when any owner or general employer could escape responsibility for contributions for the servants of another with whom he had contracted and who was in law and fact an independent contractor or subcontractor. The reason

for this is found in the above-mentioned exemption clauses sec. 3, subsections (7) (e) (1) (2) and (3), which read as follows: "Sec. 3 * * * (7) * * * (e) Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the board [now administrator] that- (1) such individual has been and will continue to be free from control or direction by another with respect to the performance of such services, both under his contract of service and in fact; and (2) such service is either outside the usual course of the business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed; and (3) such individual is customarily engaged in an independently established trade, occupation, profession or business."

These clauses are stated in the conjunctive. Therefore, granting that most owners or employers of an independent contractor at common law could satisfy one or more of such exclusion or exemption clauses, it is highly improbable that any of them could satisfy all three, since the services contemplated by such contracts ordinarily would be performed at the owner's usual place of business or in the customary course thereof. In the instant case, although the hotel plainly satisfied two of these clauses it could not show, as provided in clause (2), that the services were rendered outside the hotel's usual place or course of business. On that ground alone the board found the hotel to be the employer and the musicians to be its employees under the act.

We do not think that such an extreme view was necessarily intended by the legislature. In our judgment the provisions of the act, although definitive for tax purposes of an employment status which may be somewhat broader than the concept of employment or master and servant at common law, nevertheless did not intend to destroy all common-law concepts and to make every owner-employer

a subject employer under the act, regardless of the realities of the relationship between him and the individuals who were performing services for wages as the actual employees of an independent contractor.

In *Mount Pleasant Cab Co.* v. *Rhode Island Unemployment Compensation Board, supra,* we held that it was necessary for the board to establish that the alleged employer was legally an employer subject to the terms of the act before the latter could be required to exclude himself by satisfying the exemption clauses in sec. 3, subsections (7) (e) (1) (2) and (3). In that case we found that the contracts constituted a lessor and lessee relationship rather than an employment of services for wages or under a contract for hire. We therefore held that such lessor was not properly under the act and that the three above-mentioned exemption clauses did not apply to him.

Similarly in the instant case we are of the opinion that the hotel was not to be deemed an employer of the musicians who in reality were the employees and servants of the orchestra leader. The latter was an independent contractor and also the real employing unit of the musicians. He should be held to be the employer responsible for contributions under the act. In our judgment this conclusion follows from a consideration of the pertinent provisions of the act as amended.

Among those provisions we find that in G. L. 1938, chap. 284, §3 (6), an employer under the act is defined. Immediately thereafter, in the same paragraph, appears the following language:

> "In determining whether an employer of any person in the state employs enough persons to be an 'employer' subject to the provisions of this chapter, and in determining for what contributions he is liable hereunder, he shall, whenever he engages any contractor or subcontractor to perform for him any work which is part of his usual trade, occupation, profession or business, be deemed to employ all persons employed by such contractor or subcontractor on such work, which per-

sons shall, for the purposes of this chapter, be deemed employees of such employer, and he alone shall be liable for the contributions measured by wages paid to such persons for such work, *unless* such contractor or subcontractor accepts exclusive liability for such contributions under an agreement with such employer made pursuant to general board rules, *or unless such contractor or subcontractor is himself an 'employer' subject to this chapter.*" (italics ours)

That part of §3 (6) seems to have been amended by later enactments in some particulars but apparently the underlying substance and effect of the conditions have remained the same.

From this language it would appear at most that the servants of an independent contractor or subcontractor may be deemed to be the employees of the owner *but only if* the independent contractor or subcontractor is not qualified to be an "employer" under other pertinent provisions of the act. We are not now called upon to pass upon the question whether the legislature had power to transform the individuals, who in good faith and fact are servants of an independent contractor, into employees of the owner so as to require the latter to make contributions for protection of the servants of another.

For our purposes the language of the act, even if given reasonable effect, leads to the conclusion that in the instant case the hotel, as an employer generally which had contracted in good faith with an orchestra leader as an independent contractor for certain musical services, was not to be deemed to be the employer of the musicians who were hired and controlled by the orchestra leader, if the latter as the real employing unit was also an employer under the act. In the absence of any showing to establish the contrary, it appears to us that the orchestra leader himself was also qualified as an employer within the meaning of the act. At any rate it does not clearly appear that he was not such a subject employer thereunder. If that be so, then by operation of the language above quoted, which

has not been substantially changed by later amendments, the hotel would not be deemed to be the employer of the musicians in question.

In our judgment it follows that the hotel was not required, as the board contends, to satisfy the provisions of the clauses in sec. 3, subsections (7) (e) (1) (2) and (3) in order to be exempted or to escape the obligation of making contributions under the act for the musicians involved because the hotel was not first established to be the subject employer and employing unit under the act. See *Mount Pleasant Cab Co. v. Rhode Island Unemployment Compensation Board, supra.*

But the respondent also urges that the relationship between the hotel and the orchestra leader in each contract was found by the board to be that of employer and employee and not of owner and independent contractor; and that such finding is supported by legal evidence and therefore is conclusive in a proceeding of this nature.

In our opinion there is no evidence of probative value to support such finding. The respondents' contention and the board's finding rest upon the formal language in the contract by which the hotel is described as the "employer" and the orchestra leader as the representative of the musicians as "employees." It appears, however, that such special form of contract, Form B, so called, was dictated in each instance by an organization which was not a party or privy to the contract; that the form was not reasonably related to the essential elements creating or determining the actual legal relationship between the parties but was used only to obtain permission to play copyright music; and that the descriptive language, "employer" and "employees," is inconsistent with certain substantial provisions of the contract and other undisputed evidence relating to the right of control.

Unless we follow the mere form of the contract and disregard both the substance thereof and the legal realities of the relationship as shown by undisputed evidence, we are

forced to the conclusion that there is no evidence of probative value to support the finding of the board. For a similar conclusion see *Bartels* v. *Birmingham,* 332 U. S. 126. There the United States supreme court was confronted with an identical description of the parties in a Form B contract and was called upon to determine whether the musicians were the employees of the owner or of the orchestra leader as an independent contractor. The conclusion in that case, as here, was based on the true and substantial elements of the employment rather than on the contract's mere formal expressions and descriptions which were disregarded as of no probative value. See also *Mark Hopkins, Inc.* v. *California Employment Stabilization Comm'n,* 86 Cal. App. 2d 15.

The prayer of the petition is granted, the pertinent decision of the board is quashed, and the records certified to this court are ordered to be returned to the respondents for further proceedings in accordance with this opinion.

*Grim & Littlefield, Benjamin W. Grim, Charles H. Crawley,* for petitioner.

*Robert K. Argentieri,* for respondents.