MISSISSIPPI EMPLOYMENT SECURITY COMMISSION *v.* HEIDELBERG HOTEL COMPANY.

Division B. Mar. 12, 1951.

No. 37866 (51 So. (2d) 47)

Harry M. Bryan, for appellant.

George E. Shaw, Robert E. Perry and Forrest B. Jackson, for appellee.

**Ethridge, C.**

The Mississippi Employment Security Commission appealed from a judgment of the circuit court of the First Judicial District of Hinds County, Mississippi, reversing an order of that commission which disallowed an application for a refund of state unemployment taxes paid by appellee, Heidelberg Hotel Company, to the commission. These taxes were levied on the compensation earned by certain orchestra leaders and the members of their orchestras while playing engagements at the appellee's hotel in Jackson, Mississippi. The commission ruled that the orchestra leaders and the members of their orchestras were employees of the hotel and, therefore,

the money paid them by the hotel was subject to the unemployment tax levied upon the hotel. The circuit court reversed that ruling and held that the orchestra leaders were independent contractors, and that the members of the orchestra were employees of the orchestra leaders and not of the hotel. We affirm that decision.

The period covered by the contracts in question is from December, 1943 to December, 1946. On May 10, 1943, the hotel executed a Form B Contract, prescribed by the American Federation of Musicians, with Eddy Dunsmoor, orchestra leader. That contract designated the hotel as the employer and Dunsmoor and the musicians in his orchestra as its employees. It provided that the employer "employs the personal services of the employees as musicians severally, and the employees generally, through their representative, agree to render collectively to the employer services as musicians in the orchestra under the leadership of" Dunsmoor. The period of employment was for six months with stipulated hours for six nights per week. The price was "as per total salaries listed" on the other side of the contract, subject to changes in personnel and the union scale. On the reverse side of the contract is listed Dunsmoor's name and that of nine other members of the orchestra with their weekly wages. The contract further provided as follows: "The employer shall at all times have complete control of the services which the employees will render under the specifications of this contract. On behalf of the employer the Leader will distribute the amount received from the employer to the employees, including himself, as indicated on the opposite side of this contract, or in place thereof on separate memorandum supplied to the employer at or before the commencement of the employment hereunder and take and turn over to the employer receipts therefor from each employee, including himself. The amount paid to the Leader includes the cost of transportation, which will be reported by the Leader to the employer. The employer

hereby authorizes the Leader on his behalf to replace any employee who by illness, absence, or for any other reason does not perform any or all of the services provided for under this contract. The agreement of the employees to perform is subject to proven detention by sickness, accidents, or accidents to means of transportation, riots, strikes, epidemics, acts of God, or any other legitimate conditions beyond the control of the employees. The employer agrees that the Business Representative of the Musicians' Local, in whose jurisdiction the musicians are playing, shall have access to the premises in which the musicians perform (except in private residences) for the purpose of conferring with the musicians. The musicians performing services under this contract must be members of the American Federation of Musicians and nothing in this contract shall ever be so construed as to interfere with any obligation which they may owe to the American Federation of Musicians.''

The contract was executed by the hotel as employer and signed by Dunsmoor as ''orchestra leader''. None of the other musicians signed it. There were four other substantially similar, Form B contracts for different periods between Dunsmoor and the hotel. One of them was not signed by Dunsmoor. Another Form B contract was executed by Jerry Lane, orchestra leader, and the hotel. That instrument provided that the price agreed upon was ''$750 per week. It is understood that all operational overhead will be borne by the contractor,'' apparently referring to Lane. That contract did not list the names or weekly salaries of the musicians. An over-all price was agreed upon. The contract further provided that it was subject to cancellation by the employer on two weeks notice in case of ''drunkenness or disorderly conduct on the part of musicians due to negligence on part of contractor,'' and ''failure on the part of the contractor to maintain discipline of his employees consistent with hotel policy.''

For the stated period, the appellee paid the unemployment tax on the money paid the orchestra leaders and individual musicians. In 1947, appellee applied for a refund of these taxes paid by it on the ground that the band leader was an independent contractor and the employer, and not the hotel. The application for refund was denied by the commission on May 13, 1949. Several weeks thereafter appellee applied to the commission for a rehearing, saying the Commissioner of Internal Revenue had, in the meantime, changed his ruling and held that appellee was not an employer and not subject to the Federal Insurance Contributions Act, 26 U. S. C. A. Sec. 1400, and the Federal Unemployment tax thereunder, in accordance with the decision of the United States Supreme Court in Bartels v. Birmingham, 1947, 332 U. S. 126, 67 S. Ct. 1547, 91 L. Ed. 1947, and that appellee had additional evidence to support an exemption. A rehearing was had, in which the undisputed evidence showed that the orchestra leaders had orchestras which they used for this and other engagements and which were not formed solely for the purpose of fulfilling the particular contract. The leaders furnished the music library and controlled the discipline and behavior of orchestra members and the organization and selection of the musical program. They also selected, hired and discharged the musicians and bore the expenses pertaining to the programs. By arrangement with the leaders and at their requests, appellee paid the members their individual weekly wages by hotel checks. The orchestras were built around leaders whose name and distinctive style were intended to give the orchestra individuality. The Form B Contract was prescribed by the American Federation of Musicians, although it was not a party to the contract, and was required in order for the hotel to employ an orchestra. Appellee never undertook to prescribe the program except that it required that the music should be "hotel style". The hotel exercised no management or control over the orchestra members. On one or two

occasions, the manager of the hotel requested the orchestra leader to stop some of the members from drinking during performances, and on another occasion the manager asked the leader not to play certain types of jazz music.

After the rehearing, the commission, on June 10, 1949, again denied the application for refund, and from that order the present appellee appealed to the circuit court by certiorari. Since counsel for both sides have stipulated that this record shall include the testimony before the commission, and make no issue as to the scope of review by certiorari, we will consider such point as waived. The circuit court reversed the commission and granted a refund of the taxes paid by the hotel in the amount of $3,282.85.

The tax levied by the commission was based upon the Mississippi Unemployment Compensation Act, Miss. Code of 1942, Secs. 7368-7446, which was originally passed in 1936. Miss. Laws 1936, Ch. 176; Miss. Laws 1940, Ch. 295; Miss. Laws 1948, Ch. 412. The tax is levied by Code Sections 7390-7393. It is "payable by each employer . . .". The term "wages" includes that part of the remuneration which "has been paid to an individual by an employer with respect to employment during any calendar year . . ." Section 7391 provides that "Each employer shall pay contributions . . ." in designated amounts. These sections levying the tax refer to the tax upon "employers" only, and the manifest intent of the legislature was to levy the tax only upon employers. This intent is indicated further by Code Section 7440(h) which provides that "employer" includes any employing unit which "has or had in employment" eight or more individuals. Section 7440(i) (1) provides: " 'Employment' means any service performed prior to the effective date of this act which was employment as defined in this section prior to such date and subject to the other provisions of this subsection, service performed after the effective date of this act, including service in interstate commerce, performed for wages, or

under any contract of hire, written or oral, express or implied."

Section 7440(i) (5) then states: "Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant."

Two basic questions are involved: (1) What is the legislative yardstick for determining who is an employer under the act, and (2) how does that yardstick apply to the facts of this case? Appellant says that paragraph (5) of Section 7440(i) requires that the test be in the alternative: whether a person controls or directs the performance of the services, or had the legal right to so control and direct it. Although appellee here did not actually control the performance of the services, still appellant says it had the right to do so under the Form B Contract, and therefore appellee was an employer. In order to obtain an exemption for appellee, appellant argues that both of these elements must be nonexistent. However, if this is correct, the statutory standard is in derogation of the common law, because the test thereunder is factual rather than contractual. The contract is relevant but it is only one of numerous elements to be considered. For example, the Restatement of Contracts, Section 220, lists nine matters of fact which are to be considered in determining who is the servant, and one of those matters is "the extent of control which, by the agreement, the master may exercise over the details of the work." In Bartels v. Birmingham, 1947, 332 U. S. 126, 67 S. Ct. 1547, 91 L. Ed. 1947, the court held that a night club was not the employer of musicians, despite the provisions of a Form B Contract. In First National

Bank of Oxford v. Mississippi Unemployment Compensation Commission, 1946, 199 Miss. 97, 23 So. (2d) 534, the court disregarded the terms of a contract and based its decision as to whether a janitor was the servant of the bank upon all of the facts. There are numerous analogous decisions where tort liability was undertaken to be eliminated by a contract reciting that the worker was an independent contractor. Kisner v. Jackson, 1931, 159 Miss. 424, 132 So. 90.

Paragraph (5) of Section 7440(i) must be interpreted in the context of related sections of the statute. Subsection (h) of Section 7440 undertakes to define "employer"; he must have eight or more people "in employment". The word is defined here repetitiously and in its own terms. However, paragraph (5) of subsection (i) specifically provides that "the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant." The legislature incorporated by reference into the statute, for the purpose of determining whether a particular person is an employer within the act, the common law rules of master and servant. Nor is this conclusion affected by the first part of paragraph (5) of sub-section (i). This provision is designed to define whether services and wages of a particular individual performing such services are subject to the tax, and whether they are obtained by him under an employment status. His wages are subject to the tax under the act "unless and until it is shown to the satisfaction of the commission that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact . . .". But this is entirely distinct from ascertaining whether a particular person is an employer who must pay the tax, a taxpayer under it. This is the problem of liability for the tax. The existence of an employment status on behalf of the wages of the worker is, therefore, distinct

from the question of who is an employer liable for the tax. For example, there is no question but that the wages of the individual musicians in the orchestras are "employment" wages under a contract of hire and subject to the tax. The issue is who is to pay that tax, the hotel or the orchestra leader. This reduces to the problem of who is the employer of the musicians. This interpretation is further confirmed by the fact that paragraph (5) of sub-section (i) refers to employment status, as set out in paragraphs (1), (2), and (3) of that sub-section, when it states that "Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until . . .".

The second clause of paragraph (5) of sub-section (i) refers expressly to the method of determining who is an employer of a person receiving wages subject to the act. It, therefore, applies to sub-section (h) which defines what "employer means". And it expressly incorporates in that definition "the principles of the common law governing the relation of master and servant." The fact that these two different criteria for different elements of the tax are in the same paragraph does not indicate a contrary legislative intent. Although it may have been more precise to have separated them, this was a matter of draftsmanship. We are concerned solely with application of the legislative intent ascertainable from the enacted statute. The commission's interpretative ruling on what is the statutory test for the employer-employee relationship under these facts is not in accord with what we construe to be the legislative purpose.

Analogous decisions on this same problem from other states agree with this result. Mark Hopkins, Inc. v. California Employment Stabilization Commission, 1948, 86 Cal. App. 2d 15, 193 P. (2d) 792, involved a similar tax upon a hotel employing "name bands" under a Form B Contract. It is not clear as to whether the California statute is similar to that of Mississippi. However, the court examined the facts, refused to be bound by the

terms of the contract alone, and held that the orchestra leader and not the hotel was the employer of the musicians. In Hill Hotel Company v. Kinney, 1940, 138 Neb. 760, 295 N. W. 397, the Nebraska court reached the same result on similar facts and a statute similar to that in Mississippi. The court held that the statute applied a common law test of the employment relationship. See also Unemployment Compensation Commission of Wyoming v. Mathews, 1941, 56 Wyo. 479, 111 P. (2d) 111; Palmer v. Michigan Unemployment Compensation Commission, 1945, 310 Mich. 702, 18 N. W. 2d 83, 158 A. L. R. 909. A recent case from Rhode Island is somewhat similar to the present one. Trinity Building Corporation of New York v. Rhode Island Unemployment Compensation Board, R. I. 1950, 71 A. (2d) 505, 509. The hotel executed a Form B Contract with the orchestra leader as representative of the musicians, designating them as the hotel's employees. The statute required that the individual be free from control "both under his contract of service and in fact" in order for the wages to be exempt. The statute apparently had no express provision referring to common law principles of master and servant, and in that sense it is a more extensive application of the common law test than is the present case. Nevertheless, the Rhode Island Court disregarded the formal language in the contract, because it was in contradiction of the facts under which the orchestra operated. It held that the contract was "inconsistent with certain substantial provisions of the contract and other undisputed evidence relating to the right of control." It applied common law principles of master and servant. This was the same result reached by the United States Supreme Court in Bartels v. Birmingham, 1947, 332 U. S. 126, 67 S. Ct. 1547, 91 L. Ed. 1947, in which the court held that the orchestra leader and not the night club was the employer of musicians for purposes of liability under the unemployment tax of the Federal Social Security Act. The Federal statute had no definition similar to that of

the Mississippi act, but the court said that the Form B Contract was not controlling. Its decision was based upon the factual relationships between the parties.

In brief, both legislative intent and analogous precedents on similar problems from other states necessitate a conclusion that ██ ██ the test for the employer-employee relationship under this act is obtained by an application of the principles of the common law of master and servant. Moreover, at common law the terms of a contract are only a part of the elements to be considered in determining whether an individual is an employer. The true test incorporates a consideration of all of the facts and the economic realities.

██ ██ The remaining question is whether the ruling of the commission denying the appellee's application for refund of taxes paid is supported by substantial evidence in the record. No such support exists, but on the contrary, the overwhelming weight of the evidence is adverse to the commission's ruling on the facts. Under these facts, the hotel exercised no control over the operation of these orchestras, and the leader and not the appellee was the employer of the musicians. For these reasons, the judgment of the circuit court is affirmed.

Affirmed.

The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the case is affirmed.