MOZINGO, et al. *v.* MISSISSIPPI EMPLOYMENT SECURITY COMM.

No. 39664          May 16, 1955          80 So. 2d 75

*Wells, Thomas & Wells, Joe Jack Hurst*, Jackson, for appellants.

_Harry M. Bryan_, Jackson, for appellee.

Holmes, J.

This is an appeal from a judgment of the Circuit Court of the First Judicial District of Hinds County affirming an order of the Mississippi Employment Security Commission levying an assessment of contributions against the appellant under the Mississippi Employment Security Law.

The assessment was based upon the compensation claimed by the Commission to have been earned by three individuals, namely, F. L. Conerly, J. C. Mozingo and C. R. Scanlon, during the year 1951.

Pertinent provisions of the applicable statute are found in Section 7440 (h)(1), (i)(1), (i)(5), and (n), Code of 1942, reading as follows:

"(h)(1). 'Employer' means: Any employing unit which . . . has or had in employment, 8 or more individuals . . .

"(i)(1). 'Employment' means any service performed . . . for wages, or under any contract of hire, written or oral, express or implied.

"(i)(5). Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the Commission that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.

"(n). 'Wages' means all remuneration for personal services, including commissions and bonuses . . ."

The appellant admittedly had in his employment seven other individuals whose status as employees is not questioned, and if the three above named individuals are held to be employees, then the appellant became subject to the statute as one having eight or more individuals in his employment.

The sole question presented, therefore, is whether the said three individuals were employees of the appellant within the purview of the statute. The solution of this question necessitates a review of the facts. The order of the Commission incorporated as a part thereof the stenographic transcript of the proceedings before the Commission and provided that the same should constitute a part of the record in the event of an appeal. The evidence before the Commission is, therefore, before us for consideration without objection upon the ground

that the review of the Commission's order is obtained by certiorari proceeding. We state the facts as disclosed by the record.

The appellant held a distributorship from the Tom Huston Peanut Company of Columbus, Georgia, under which he engaged in the business of selling at wholesale confectionary merchandise, consisting of Tom Huston products which he purchased from the Tom Huston Peanut Company, and candies, Wrigley gum, potato chips, corn cheez and pork skins, which he purchased from different sources. He was located at Jackson, Mississippi, where he maintained a warehouse in which he housed the merchandise which he purchased, and he operated in a prescribed territory assigned to him by the Tom Huston Peanut Company. He had so conducted said distributorship since May 20, 1946. In the operation of his said business, the appellant owned his own trucks and equipment and hired his own salesmen and helpers, and was in complete control of the operations of his business free from any direction or control thereover by the Tom Huston Peanut Company. His salesmen drove the trucks and were paid on a commission basis, and were recognized by the appellant as employees. In 1951, three of these salesmen, namely, the said F. L. Conerly, J. C. Mozingo, and C. R. Scanlon, approached the appellant with a view of formulating some contractual arrangement whereby they might become independent operators, that is to say, whereby each might conduct an independent distributorship in an assigned portion of the appellant's prescribed territory. It was proposed that each would purchase the truck which he was then driving and would purchase, from the appellant the needed merchandise to stock the truck. The appellant agreed to the arrangement and sold to each the truck which he was then driving, selling the same on time and without a down payment under a retained title contract. The agreement between the parties was reduced to writ-

ing and it is this agreement upon which the appellee relies as the basis of the appellant's claimed liability for the contributions assessed.

In this agreement the appellant was designated as distributor and the other party was designated as salesman, and we shall so refer to the parties in relating the terms of the agreement. The agreement provided that all merchandise sold off of the salesman's truck should come from Bob Mozingo's warehouse; that the salesman would carry liability insurance on his truck and would carry fire, theft and collision insurance on the truck if there should be any indebtedness thereon to the distributor, or if no indebtedness thereon the salesman might cancel the fire, theft and collision insurance; that the salesman would pay one-half the cost of all display equipment placed on his route and that a sufficient supply of display and the right type would be put out as soon as available, and as soon as they had the merchandise to stock the same; that if at any time the territory worked by the salesman appeared too much to work properly, an agreement would be worked out between the salesman and the distributor to reduce the territory so that all territory might be properly worked; that all merchandise bought from the distributor should net the distributor seven percent on the sales to the salesman; that all sales that distributor could get credit for would be credited to the salesman at his cost price; that the selling price of all merchandise to the retail merchant would be agreed to by the distributor and salesman and that in no instance should prices be increased or decreased unless agreed to by both parties; that in the territory worked by the salesman he would call on all accounts regularly each week, or more often if needed, and that all equipment should be kept clean as possible under prevailing conditions and that all merchandise should be checked to see that it was fresh, and if not fresh, the same was to be picked up and given credit

for, especially on merchandise that the salesman was allowed credit for in the warehouse; that the territory worked by the salesman was a part of the Bob Mozingo distributorship and would remain so as long as the salesman worked the same, and that the salesman would, at all times, keep an up to date route list of all calls made by him; that in the event it became necessary for the salesman to give up his territory he should first give to the distributor the right to purchase his truck on a fair depreciated value and that the distributor would purchase back from the salesman all display equipment, depreciating it on a fair basis, and that the salesman would give to the distributor a proper route list of all customers called on by him at the time he gave up the territory; that the salesman would conduct himself at all times in a manner to reflect credit to himself, the distributor, and the Tom Huston Peanut Company.

The proof further showed, however, that while the aforesaid agreement was the agreement under which the parties worked, they departed therefrom in their actual operations, and we now relate some of the material facts disclosed by the proof relative to the actual operations of the parties.

One of the individuals in question maintained his own warehouse in Vicksburg. The others had no warehouse. All of them got their merchandise and were required to get their merchandise from the appellant. These individuals went into the warehouse of the appellant and loaded up their trucks and either paid cash for the merchandise which they put on their trucks or paid for it the following day after the amount thereof had been rendered by statement. The income of these individuals represented the difference between what they paid the appellant for the merchandise and what they sold it for less their expenses. Appellant did not know what they made per month, nor did he know how much merchandise they sold. The respective individuals maintained their

trucks and paid their own operating expenses, and their insurance premiums, and after their trucks were paid for, they were privileged to trade in their trucks independently of the appellant, or do whatever they wished to do with their trucks without consulting the appellant.

In 1951, the year for which the contributions were levied, the three individuals in question had fully paid for the trucks which they purchased. After getting their load of merchandise, they would go out and sell it in the territory which was assigned to them by the appellant, and then come back for the purpose of replenishing their stock. If any of the merchandise spoiled for reasons that would justify the manufacturer in making a refund to the appellant, he, the appellant, would make a refund to such individuals. The manufacturers put out advertising matters which was available to the appellant and the said individuals. There was some advertising matter that the individuals paid one-half the cost. The appellant did not fix the prices for the merchandise sold by the individual to the retailer but the individual fixed this price and did it generally without consultation with the appellant. The individual hired his own helpers and paid his own helpers without the necessity of any approval by the appellant. The appellant required no route list. The individuals fixed their own hours of work and determined when they would take their vacations. The appellant did not know who their customers were. He fixed no rules governing the operation of the trucks. This was left entirely to the individual operator. The individual sold his merchandise for cash or credit as he desired. When sold for credit, if the account was one which the appellant considered good, he would buy the account from such individual. He was under no obligation to buy it. Each individual had the right, if he saw fit, to use his truck in other business and some of them did from time to time employ the same in hauling. If the arrangement between the appellant and the named

individuals developed to be unsatisfactory, he discontinued selling them merchandise. If the individual became dissatisfied, he quit buying. If any of the merchandise spoiled for causes that did not warrant the manufacturer in making the same good, the individual suffered the loss. The appellant required said individuals to carry liability insurance because if anything happened, it might keep them from being forced out of business. The contractual relationship between him and said individuals could be terminated at any time. The individuals were not covered by workmen's compensation, nor were they reported by the appellant for Social Security tax. If any of the said individuals purchased another truck, they financed the same through the dealer. Appellant never at any time had any right of control over nor did he exercise control over the physical conduct or activities of the said individuals, nor in the details of the performance of the work in which they were engaged.

One of the individuals, namely, F. L. Conerly, testified that in his relationship with the appellant, he operated as an independent vendor of the merchandise which he purchased from the appellant, and that he carried on his operations free of any control or direction by the appellant. He said that his reasons for entering into the contract with the appellant was that he "wanted to get away from having a boss." He further said that in rendering his income tax, he never showed commissions received from the appellant from his operations, but made a statement showing how much he bought and his gross sales and his expenses and thus arrived at his income. In his income tax return, he took depreciation on his truck.

In determining the question as to whether under the facts of this case the assessment in question is to be upheld, it should be borne in mind that it is well established under the decisions of this Court that the contributions levied by the Commission constitute an ex-

cise tax and that the statute authorizing the levying of the same is to be construed liberally in favor of the taxpayer and strictly against the taxing power, and that all doubts are to be resolved in favor of the taxpayer. Stone v. General Box Company, et al., 212 Miss. 60, 53 So. 2d 85; American Oil Company v. Wheeless, 185 Miss. 521, 187 So. 889.

The test as to who is a servant is stated by this Court in Texas Company v. Wheeless, 185 Miss. 799, 187 So. 880, as follows: ''The test as to who is a servant is stated to be whether the service is rendered by one whose physical conduct, time and activities in the performance of his duties are controlled, or are subject to the right of control, by the alleged master under the contract of employment or hire.'' Further in the same case, the Court said: ''We do not think that 'contract of hire' within the meaning of the act includes a contract such as the one here being construed, but that it embraces, and was intended to embrace, only those who are under the control and direction of the alleged employer in the performance of the details of their work and in the use of the means employed.''

We think it cannot be doubted that the services performed by the three individuals in question under their contract of service and in fact, were wholly free from appellant's control and direction over the performance thereof. It is contended by the appellee, however, that the written contract originally entered into by the appellant and said three individuals is controlling and that by said contract the appellant had the right of control over and controlled the physical conduct and activities of said individuals and the details of the performance of the services in which they were engaged. It is not necessary for us to decide, and we do not decide, whether the contract taken alone discloses an employer-employee relationship. Under the express provisions of the statute, Section 7440 (i)(5), Code of 1942, both the

contract of service and the facts of operation thereunder must be considered in determining the relationship. This Court has expressly so held in the case of Mississippi Employment Security Commission v. Heidelberg Hotel Co., 211 Miss. 104, 51 So. 2d 47.

That case involved a contract between the hotel and an orchestra leader. The contract designated the hotel as the employer, and the orchestra leader and his musicians as its employees. It provided that "the employer shall at all times have complete control of the services which the employees will render under the specifications of the contract." The proof showed that in actual operations the hotel exercised no management or control over the orchestra members. The Court held that the orchestra members were not employees of the hotel and that the hotel was not liable for an assessment of contributions based upon the earned compensation of the orchestra members. The Court said: "The contract is relevant but it is only one of the numerous elements to be considered." Further, the Court said: "Moreover, at common law, the terms of a contract are only a part of the elements to be considered in determining whether an individual is an employer. The true test incorporates a consideration of all of the facts and the economic realities."

In conformity with these views, the Court refused to be bound by the terms of the contract in the Heidelberg Hotel Company case and held that the orchestra leader and not the hotel was the employer of the musicians. Thus in the case at bar the relationship of the appellant and the individuals in question is not to be determined by the contract alone, but by the factual relationship between the parties. Applying these principles to the facts of the case before us, we are clearly of the opinion that the individuals in question were not the employees of the appellant within the purview of the statute, and that the Commission and circuit court were

in error in so holding. We are supported in this conclusion by the cases of Texas Company v. Wheeless, 185 Miss. 799, 187 So. 880, and American Oil Company v. Wheeless, 185 Miss. 521, 187 So. 889. ▮▮ We are not confronted here with the rule that the decision of the Commission should prevail if supported by substantial evidence. There is no material dispute in the evidence as to the actual operations of the parties. The Commission's decision was not a ruling on the facts but rather a construction of the facts whereby it erroneously determined the relationship of the parties.

It follows from the views expressed that the judgment of the court below is reversed and judgment rendered here for appellant.

Reversed and judgment here for appellant.

*Roberds, P. J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.