McLAUGHLIN *v.* FOLLENDORF

[No. 18,573. Filed December 20, 1955. Rehearing denied January 12, 1956.]

*Robert K. Rodibaugh,* of South Bend, and *F. LeRoy Wiltrout,* of Elkhart, for appellant.

*Jones, Obenchain & Butler,* and *Roland Obenchain,* of South Bend, for appellee.

ROYSE, C. J.—The Full Industrial Board of Indiana denied appellant compensation for an accidental injury on the sole ground that he was not an employee of appellee at the time of said accidental injury.

By proper assignment of error appellant questions the finding and award of the Board and says the evidence in the record leads solely and inescapably to the conclusion appellant was an employee of appellee.

The evidence consists of a stiplation, documentary evidence, and the testimony of one witness. It may be summarized as follows:

For several years prior to the commencement of this action the appellee had been engaged in the operation of the "Indiana Cafe" in South Bend, Indiana. As part of the services rendered her customers she had playing there many different orchestras, the members of which were all members of the American Federation of Musicians and of Local 278 of said Federation, hereinafter referred to as the Union. Appellant is a piano player who, while playing with one Al Ricci Orchestra in said cafe on February 16, 1954, sustained personal injuries by accident when he fell while returning to the bandstand after an intermission.

The Union, of which all of the members of the Ricci Orchestra were members, prescribed a form of contract known as B-1, which proprietors of such businesses were required to sign. This B-1 contract provides as follows:

"THIS CONTRACT for the personal services of musicians, made this 30th day of November, 1953, between the undersigned employer (hereinafter called the employer) and _____(5) Five_____ musicians (hereinafter called employees) (including leaders)

represented by the undersigned representative.

"WITNESSETH, That the employer employs the personal services of the employees, as musicians severally, and the employees severally, through their representative, agree to render collectively to the employer services as musicians in the orchestra under the leadership of _____Al Ricci_____ according to the following terms and conditions:

"Name and Address of place of Engagement ____ Indiana Cafe, 747 W. Indiana Ave., So. Bend, Ind._____

"Date(s) of employment: _____ Beginning Tuesday, December 22, 1953, five days per week. 16 weeks (3 months) ending March 20, 1954, with option for either party to extend this agreement indefinitely by giving a notice of four (4) weeks prior to the termination date 3/20/54. With use of option the agreement becomes subject to a notice of four weeks by either party for the purpose of terminating same._____

"The employer or employee is hereby given option to extend this agreement for a period of _____ indefinite_____ weeks beyond the original term thereof. Said option can be made effective only by written notice from the employer to the employees not later than ____ four weeks _____ days prior to the expiration of said original term that he claims and exercises said option.

"PRICE AGREED UPON: ____ $300.00 (Three hundred and no/100th dollars) per week. _____

"This price includes expenses agreed to be reimbursed by the employer in accordance with the attached schedule, or a schedule to be furnished the employer on or before the date of engagement.

"To be paid _____ Once each week_____

(Specify When Payments Are to be Made)

"The employer shall at all times have complete control of the services which the employees will render under the specifications of this contract. On behalf of the employer the Leader will distribute the amount received from the employer to the employees, including himself, as indicated on the opposite side of this contract, or in place thereof on separate memorandum supplied to the employer

at or before the commencement of the employment hereunder and take and turn over to the employer receipts therefor from each employee, including himself. The amount paid to the Leader includes the cost of transportation, which will be reported by the Leader to the employer. The employer hereby authorizes the Leader on his behalf to replace any employee who by illness, absence, or for any other reason does not perform any or all of the services provided for under this contract. The agreement of the employees to perform is subject to proven detention by sickness, accidents, or accidents to means of transportation, riots, strikes, epidemics, acts of God, or any other legitimate conditions beyond the control of the employees. The employer agrees that the Business Representative of the Musician's Local in whose jurisdiction the musicians are playing, shall have access to the premises in which the musicians perform (except in private residences) for the purpose of conferring with the musicians. The musicians performing services under this contract must be members of the American Federation of Musicians and nothing in this contract shall ever be so construed as to interfere with any obligation which they may owe to the American Federation of Musicians, subject, however, to all applicable laws.

"To the extent that their inclusion and enforcement are not prohibited by a valid federal or state statute, the rules, laws and regulations of the American Federation of Musicians, and the rules, laws and regulations of the Local in whose jurisdiction the musicians perform, insofar as they are not in conflict with those of the Federation, are made a part of this contract, and to such extent nothing in this contract shall ever be construed as to interfere with any obligation which any employee hereunder may owe to the American Federation of Musicians pursuant thereto.

"Any member or members who are parties to or affected by this contract, whose services thereunder or covered thereby, are prevented, suspended or stopped by reason of any strike, ban, unfair list order or requirement of the Federation shall be

free to accept and engage in other employment of the same or similar character, or otherwise, for other employers or persons without any restraint, hinderance, penalty, obligation or liability whatever, any other provisions of this contract to the contrary notwithstanding.

"If this contract requires or contemplates the recording, transmission or reproduction of any music by any mechanical means, then it shall not become effective unless and until it shall be approved by the International Executive Board of the American Federation of Musicians.

"The employer represents that there does not exist against him, in favor of any employee-member of the American Federation of Musicians, any claim of any kind arising out of musical services rendered for any such employer. It is agreed that no employee-member of the American Federation of Musicians will be required to perform any provisions of this contract or to render any services for said employer as long as any such claim is unsatisfied or unpaid, in whole or in part. The employer in signing this contract himself, or having same signed by a representative, acknowledges his (her or their) authority to do so and hereby assumes liability for the amount stated herein.

"Name of Employer _____Indiana Cafe_____
Accepted by Millicen B. Fallendorf d/b/a
Employer _____Ind. Cafe _____

"Street Address _____747 West Indiana Ave. ____

"City ____South Bend____ State ____Ind. ____

Accepted
____Al Ricci____
Orchestra Leader

"Phone _____    Address _____

By _____
(Representatives
of Employees)

"If contracted by licensed booker, he must insert on the reverse side on contract the name, address and telephone number of the local collecting agent

of the American Federation of Musicians in whose jurisdiction the engagement covered by the contract is to be played.

"9-15-49     FORM B-1     Printed in U. S. A.
(Reverse)

"Local collecting agent _____
"Address _____ City_____ State_____
"Telephone _____

| "Names of Employees | Local Number | S. S. Number | Wages |
|---|---|---|---|
| _____ (leader) | _____ | _____ | $_____ |
| "Al Ricci _____ | _____ | _____ | _____ |
| "Julius Siri _____ | _____ | _____ | _____ |
| "John E. *Siri* Lehr | _____ | _____ | _____ |
| "Sam Rowe _____ | _____ | _____ | _____" |

Two receipts for weekly payments made by appellee to the Ricci Orchestra without withholding of Federal income taxes or Social Security taxes were introduced in evidence. A portion of the By-Laws of the Union were introduced in evidence.

Al Ricci testified he had several conversations with appellee before the contract was executed concerning the price of the band, the type of music preferable, and the relation of playing and intermission. The said appellant's name was not on the back of the contract. While negotiating the contract he was having trouble in deciding what piano player he would use; that he used three piano players before appellant came on this job. We now quote the condensation of his further testimony as set out in appellant's brief:

"I am a member of the American Federation of Musicians and Local 278. I have been an orchestra leader at least twenty years. The name *of* my orchestra has gone by in recent years is Al Ricci Orchestra. It's recognized. It is one of the orches-

tras registered at the headquarters of 278. I didn't make a contract to the Indiana Cafe through 278, but I inform them and file a contract before we start. In my discussion with Mrs. Fallendorf I had the form of contract supplied to me by the union headquarters which I submitted to her. All of my contracts are on that form B-1, far as this writing down at the bottom. The Frank Hamilton Trio was playing there at the time of the negotiations with Mrs. Follendorf and the Ken Morris Trio followed me. Those were name orchestras, too. The things that I discussed with Mrs. Follendorf really were the price of the band and the general idea about the time, the type of music suitable for the place and the relation of playing and intermission. I told her the price of the Ricci orchestra would be $300 per week. She paid each week $300 through the time we were there. John E. Lehr was acting as my manager, or took care of my business for me. At no time did Mrs. Follendorf make any payment whatever to any of the members of my orchestra, other than to myself or the secretary. Whatever the members received they received from me or Mr. Lehr under some arrangement which I an 'that man' have had."

So far as we have been able to ascertain the construction of this B-1 form of contract has not been before this court or our Supreme Court. However, on several occasions the question has been passed upon by appellate tribunals in other jurisdictions. In 158 A. L. R. 915, under the Annotation it is stated:

"With respect to the group of cases suggested by the title there is no absolute rule or test, any more than in other cases involving the employer-employee and independent contractor relationships, for determining whether one is an independent contractor or an employee of the management or establishment in which the service is rendered; each case must be determined largely upon its own facts. Generally speaking, however, the same tests which are applicable in other cases involving ques-

tions of status as independent contractor or employee are applicable on the question of the employee status of a musician or entertainer within the meaning of workmen's compensation, social security, or unemployment insurance legislation, and the particular result is usually governed by a combination of circumstances. In cases arising under statutes of this type most courts apply the conventional common-law tests of the existence of the relation of employer and employee or of employer and independent contractor which govern in actions of tort, although some courts, having in view the purposes and remedial nature of these statutes, have given them a more liberal interpretation, with the result of bringing into the scope of their operation many who under common-law concepts and definitions would be independent contractors rather than employees.

. . . .

"The most important factor in determining whether one is an independent contractor or an employee is the extent and character of the control exercised or exercisable by the one claimed to be the employer, usually determined as an ultimate fact. This factor involves a process of distinguishing between control over results and control over details, in that practically every contract reserves or presupposes retention of some control by the one for whom the service is performed, to the end that he may assure performance within the scope or purpose thereof, and so he may exercise a limited control without rendering the person performing the services mere servants; the relation of master and servant is not inferable from powers which do not deprive the contractor of his right to direct performance, especially the manner thereof, according to his own initiative, so long as he does it in accordance with the contract, and his activities or orders are directed to the result sought thereby, the control of the work reserved to the one for whom it is done, necessary to effect a master-servant relationship, being deemed, as in other cases, control of the means and manner of performance as well as of result."

In a supplemental annotation in 172 A. L. R. 325 the same general principles are enunciated.

In the case of *Bartels* v. *Birmingham, etc. et al.* (1947), 332 U. S. 126, 91 L. ed. 1947, 172 A. L. R. 317, the Supreme Court of the United States held dance hall operators are not subject to the employment tax imposed by the Social Security Act in respect to members of "name" bands engaged by them under a contract with the band leader. The Court was considering the same contract before us in this case. It said:

> "We are of the opinion that the elements of employment mark the band leader as the employer in these cases. The leader organizes and trains the band. He selects the members. It is his musical skill and showmanship that determines the success or failure of the organization. The relations between him and the other members are permanent; those between the band and the operator are transient. Maintenance costs are a charge against the price received for the performance. He bears the loss or gains the profit after payment of the members' wages and the other band expenses."

In *Trinity Bldg. Corporation* v. *Rhode Island Unemployment Compensation Board et al.* (1950), 76 R. I. 408, 71 A. 2d 505, the Supreme Court of Rhode Island, in holding the leader to be the employer and not the hotel, under a similar contract, in reversing the action of the Board, said:

> "In our opinion there is no evidence of probative value to support such finding. The respondents' contention and the board's finding rest upon the formal language in the contract by which the hotel is described as the 'employer' and the orchestra leader as the representative of the musicians as 'employees'. It appears, however, that such special form of contract, Form B, so called, was dictated in each instance by an organization which was not

a party or privy to the contract; that the form was not reasonably related to the essential elements creating or determining the actual legal relationship between the parties but was used only to obtain permission to play copyright music; and that the descriptive language, 'employer' and 'employees,' is inconsistent with certain substantial provisions of the contract and other undisputed evidence relating to the right of control.

"Unless we follow the mere form of the contract and disregard both the substance thereof and the legal realities of the relationship as shown by undisputed evidence, we are forced to the conclusion that there is no evidence of probative value to support the finding of the board."

To the same effect see: *Mark Hopkins, Inc.* v. *California Employment Stabilization Commission et al.* (1948), 86 Cal. App. 15, 193 P. 2d 792; *Mississippi Employment Sec. Commission* v. *Heidelberg Hotel Co.* (1951), 211 Miss. 104, 51 So. 2d 47, citing numerous authorities from other jurisdictions; *Schmidlkofer* v. *Industrial Commission et al.* (1953), 265 Wis. 535, 61 N. W. 2d 862.

While there are some cases which hold that under the terms of this contract the musicians are employees of of the proprietor, the weight of authority is to the contrary. We agree with the majority view.

In the case of *News Publishing Company* v. *Verweire et al.* (1943), 113 Ind. App. 451, 49 N. E. 2d 161, where the facts were somewhat analogous to those in this case, although the B-1 contract was not involved, this court in reversing a decision of the Review Board held that appellee, who was engaged by appellant to instruct boys in its band, was not an employee of appellant.

In this case appellant did not sign the contract with appellee. In fact, he began work with Ricci after the contract had been executed. Appellee did not fix or

pay his salary or the salaries of the other members of this orchestra. All these things were determined by Ricci. In our opinion this contract was a subtle attempt to impose the liabilities of an employer upon appellee without giving her the authority, rights and privileges of an employer.

The decision of the Full Industrial Board is affirmed.

NOTE.—Reported in 130 N. E. 2d 779.