MYERS, P.J.,
for the Court.
¶ 1. Senior Partners, Inc. seeks review of a Circuit Court of Hinds County judgment affirming the Mississippi Employment Security Commission’s[1] decision finding Senior Partners an employer within the meaning of Mississippi Code Anno *46 tated section 71-5-11 (Rev.2000), and holding it liable to pay unemployment compensation taxes for workers it referred to perform sitter services. Finding that the Commission’s order is supported by substantial evidence, we affirm.
STATEMENT OF FACTS
¶ 2. Senior Partners, Inc. is a Mississippi corporation based in Jackson and engaged in the business of providing health care personnel consisting of sitters, aides, and certified nurse assistants to the elderly or sick. This case originated when Denisha Wilson, a sitter, filed a claim for unemployment benefits with the Mississippi Employment Security Commission (MESC), as a former employee of Senior Partners. Upon Wilson’s filing for unemployment benefits, an investigation and audit of Senior Partners ensued and the MESC found that Senior Partners had not reported any wages for Wilson.
¶ 3. The Chief of the MESC’s Contribution and Status Department rendered his April 2, 2003 decision finding that an employment relationship existed between Senior Partners and the sitters, implicating wage reporting and unemployment tax liabilities upon Senior Partners.
¶ 4. Senior Partners appealed the April 2, 2003 decision and a telephonic status hearing was held on August 19, 2003 to determine Senior Partner’s unemployment tax liability for its workers. Eldridge Rose, a MESC Unemployment Insurance Tax Field Representative, Senior Partners’ president, Price Hildebrand, and Senior Partners’ officer manager, Robin Aldridge, testified at length. On September 4, 2003, the hearing officer found that an employment relationship existed between Senior Partners and its workers. The hearing officer found, in pertinent part, the following facts:
[Slitters are required to complete an application for employment, pass a criminal background check, and a tuberculosis skin test before being cleared to serve.... The place of work and hours are established by the client without any supervision from the employer. The employer does require that the individuals have at least one year experience and conduct themselves in a professional manner while performing their job duties. The sitters cannot negotiate any pay with the clients or family members because the sitters are contracted with the employer and not with the client. Depending on where the sitters are required to work, they may have to comply to a dress code, however, this is informed to them by the employer before they are sent on their placements.... The sitters cannot relinquish their duties or hire someone else in their place because they are accountable to the employer and cannot relinquish their duties without the employer’s permission. The individuals sign an Independent Contractor Agreement indicating they were responsible for their own taxes and were not employees of this employer. Either party could terminate their working relationship without liability to the other party. In the event that the sitters had to take the client somewhere, the employer would charge the client $.30 per mile and reimburse the workers for the amount on a weekly basis. The work performed by the workers was an integral part of the employer’s business and not a service provided on an intermittent basis. All requirements and qualifications are initiated and are set by the Senior Partners, Inc. The workers must meet their requirements and work according to the standards they established.
¶ 5. Based on these findings, the hearing officer held that wages earned with Senior *47 Partners were wages susceptible of reporting and ordered unemployment taxes paid. Following this decision of the hearing officer, Senior Partners appealed to the Full Commission. The commission, in its order dated February 13, 2004, adopted and affirmed the findings of the hearing officer stating that in this case, the finding that Senior Partners was an “employer” within the meaning of the Employment Security Act (Act) was supported by substantial evidence. Senior Partners then appealed to the Circuit Court of Hinds County and oral arguments were heard. On August 17, 2005, the circuit court entered its opinion and order upholding the Commission’s decision finding it was based on substantial evidence.
¶ 6. Senior Partners now timely appeals the circuit court’s affirmance to this Court and contends that the hearing officer, Commission, and circuit court erred as a matter of law in concluding that the sitters were under its control and' direction, and were not engaged in an independent trade. At issue on appeal is whether, in light of the Mississippi Supreme Court companion cases of Miss. Employment Sec. Comm’n v. PDN, Inc., 586 So.2d 838 (Miss.1991), and Miss. Employment Sec. Comm’n v. Total Care, Inc., 586 So.2d 834 (Miss.1991), the holding that Senior Partners is an employer within the meaning of the Mississippi Employment Security Law, Mississippi Code Annotated sections 71-5-1 to 71-5-541 (Rev.2000), is contrary to law, unsupported by substantial evidence, and therefore arbitrary and capricious. We disagree.
¶ 7. Under the Act, all employers found to be employing units are compelled to make contributions to the Employment Security Trust Fund (Fund) based upon a percentage of all wages paid. Miss.Code Ann. § 71-5-351-361 (Rev.2000). Although the language of the Act refers to mandatory levies as “contributions,” in effect, the statute operates as an excise tax. In review of an excise tax, we recognize that every doubt as to their application must be resolved in favor of the taxpayer and strictly against the taxing power. Mozingo v. Mississippi Employment Sec. Comm’n., 224 Miss. 375, 383-384, 80 So.2d 75, 78-79 (1955). The implications of finding a business to be an employer is that it is assessed unemployment excise taxes for each of its employees. Section 75-5-11(I)(14) (Supp.2006) of the Mississippi Code Annotated provides the following definition of “employment” for the purposes of assessing unemployment tax contributions:
Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.
¶ 8. Where a master and servant relationship is contested, the burden of proof is upon the party seeking to prove that the worker was not an employee and thus no “employment” exists. PDN, Inc., 586 So.2d at 840. Here, Senior Partners contests the findings which hold it to be an “employer.” The determination whether an employer has met its burden of proving the conjunctive requirements of section 75-5-11(1) has been addressed on several different occasions. See id.; Total Care, Inc., 586 So.2d at 838; Clark Printing Co. v. Miss. Employment Sec. Comm’n, 681 So.2d 1328, 1330 (Miss.1996).
*48 STANDARD OF REVIEW
¶ 9. We find our standard for reviewing the findings and decisions of the MESC in Mississippi Code Annotated section 71-5-531 (Supp.2006): “In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” We are restricted to reviewing only the findings of the MESC and will not disturb such findings if they are supported by substantial evidence and there is no fraud. PDN, 586 So.2d at 840.
DISCUSSION
¶ 10. Specific factors must be considered to determine whether the type of relationship between a health care placement service and a worker can be classified as “employment” within the meaning of the Act. We consider:
(1) The extent of control exercised over the details of the work;
(2) Whether or not the one employed is engaged in a distinct occupation or business;
(3) The skill required in the particular occupation;
(4) Whether the employer supplies the tools and place of work for the person doing the work;
(5) The length of time for which the person is employed;
(6) The method of payment, whether by the time or by the job; and
(7) Whether or not the work is part of the regular business of the employer.
PDN, Inc., 586 So.2d at 841-42 (citing Miss. Employment Sec. Comm’n v. Plumbing Wholesale Co., 219 Miss. 724, 69 So.2d 814 (1954)). Our supreme court has visited this precise issue of whether health care workers referred by an agency are employees of the agency in two cases handed down on the same day: Miss. Employment Sec. Com. v. Total Care, Inc. and Miss. Employment Sec. Comm’n v. PDN, Inc. These companion cases maintain that the most significant factor in the determination of whether a master and servant relationship exists is the level of control the employer retains over the worker in the substance and detail of the work performed. Total Care, 586 So.2d at 837; PDN, 586 So.2d at 842. However, the PDN and Total Care Court were unwilling to promulgate a bright line test for determining whether an employment relationship exists, and this Court declines to formulate one here. A proper review of an arrangement between a worker and a health care service provider draws from the law of master and servant and “incorporates a consideration of all of the facts and the economic realities.” Total Care, 586 So.2d at 838.
¶ 11. In PDN, the Mississippi Supreme Court affirmed the circuit court’s order in finding that an assessment of unemployment taxes to the health care placement service was improper because the alleged employer did not exercise sufficient control or supervision over the details of the work by the nurses that it placed with service providers. PDN, 586 So.2d at 843. PDN contracted and obtained assignments for sitters, nurses’ aides, and nurses to perform at several health care facilities and private homes. Id. at 842. The workers were responsible for obtaining their own licensing and qualifications. Id. In some instances, the health care facility or individual client would pay the worker the hourly fee, and the worker would, in turn, pay PDN its portion of the fees collected. Id. This payment arrangement was entirely at the discretion of the client and worker. Id. The individual clients had the exclusive right to discharge the worker. Id. at 842. PDN was able to assess penalty *49 fees to workers who did not perform assignments agreed upon. Id. The workers could secure replacements for themselves. Id. at 842. The workers had the freedom to refuse assignments offered to them by PDN. Id. at 840. Based on this evidence, the Commission found that “in the minds of the public and patients, PDN is the employer.” Id. at 841. On review, the supreme court held that the Commission’s finding on this point was without evidentia-ry'support. Id. at 842.
¶ 12. Likewise in Total Care, the Mississippi Supreme Court affirmed the circuit court’s judgment that a personnel service provider that assigned health care workers to hospitals and individuals was not required to make contributions under the Act because the workers were not employees under the common law definition of master and servant. Unlike the wage payment arrangement of PDN, Total Care’s payment agreement required the client to pay the full hourly charge directly to Total Care, then Total Care would pay the worker their contracted hourly rate from these proceeds. PDN allowed a client to pay a worker directly for his or her services and the worker, in turn, paid PDN its share of the wage. The Total Care workers were supervised and under the control of the client or health care facility. Total Care required the employee to have the necessary licensing for their respective fields. The workers were not required to take any particular assignments, and could be discharged by either the client or Total Care. The circuit court found and the supreme court affirmed that these factors, taken together as a whole, indicated that the workers were independent contractors and not employees. Total Care, 586 So.2d at 838.
¶ 13. The case at bar is distinguishable from the aforementioned cases PDN and Total Care. While Senior Partners is in the business of providing sitters and companions, much like the businesses in Total Care and PDN, in this case Senior Partners exerts sufficient control over its employees as to create a situation of employment, warranting the assessment of unemployment contributions.
¶ 14. Senior Partners and the workers entered into contracts which indicated that the workers were responsible for their own taxes, required each worker to obtain a fidelity bond, and stated that the workers were not employees. This contract referred to the sitters, nurses’ aids and nurses as independent contractors. We follow the supreme court in stating: “However forceful such [contract] language may be inter se, they cannot seriously urge that it is binding upon third parties or upon the state through its Employment Security Commission.” Total Care, 586 So.2d at 837. The mere fact that a contract between Senior Partners required a sitter to sign a contract naming the worker an “independent contractor” is not conclusive as to whether the worker is an employee. “It is not necessary for us to decide, and we do not decide, whether the contract taken alone discloses an employer-employee relationship .... [B]oth the contract of service and the facts of operation thereunder must be considered in determining the relationship.” Mozingo, 224 Miss. at 384-85, 80 So.2d at 79.
¶ 15. Here, Senior Partners contractually forbids the clients to pay the workers directly or to negotiate pay with the clients. Senior Partners sends the workers on assignments and bills the clients for the worker’s services. While it is an uncontested fact that Senior Partners paid the workers, we recognize that this fact does not conclusively resolve whether it was an employer. Total Care, 586 So.2d at 836. However, this payment arrangement is a factor addressed in PDN as *50 indicative of the level of control the placement service exerts over the workers. PDN, 586 So.2d at 842.
¶ 16. There is no provision in the contract between Senior Partners and the workers concerning whether a worker is able to relinquish his or her duties and hire someone else in his or her place for an assignment. However, testimony from Senior Partners’ president adduced that workers are unable to replace themselves unless they are already contracted with Senior Partners and have permission. Senior Partners requires that each sitter have at least one year experience, pass a criminal background check and a tuberculosis skin test before taking assignments. The workers are also subject to random and post-accident drug testing. Therefore, should a sitter seek to replace himself or herself at an assignment, the replacement would have to contract with and be approved by Senior Partners. The fact that the worker cannot find their own replacement weighs in favor of a finding that Senior Partners operates as an employer. Id. Further, testimony developed the fact that Senior Partners retained the ultimate decision making power to discharge a sitter by dropping the worker from the rotation list. The contractual agreement required thirty days notice for either the worker or Senior Partners to terminate the employment relationship without cause. Senior Partners’ termination procedures differ from that of PDN where the recipient of the service retained the exclusive right to discharge the worker, or in Total Care, the workers could be discharged by either the client or Total Care. Total Care, 586 So.2d at 835; PDN, 586 So.2d at 842.
¶ 17. We find that in this case, Senior Partners is engaged in employment as a matter of law under the meaning of Mississippi Code Annotated section 71-5-11(I)(14), and thus Senior Partners, as an employer, is subject to paying unemployment contributions. However, nothing in this opinion should be construed to hold that every similarly situated health care service provider is an employer within the meaning of the Act. Each such service provider arrangement should be examined based upon the facts of the individual case. Because we affirm the holding that Senior Partners was an employer of Wilson, we uphold the circuit court in finding that Senior Partners should have reported her income and paid unemployment taxes accordingly.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. Effective July 1, 2004, the powers and responsibilities of the Mississippi Employment Security Commission were transferred to the Mississippi Department of Employment Security, Office of the Governor, established by Mississippi Code Annotated section 71-5-101 (Supp.2006). See Miss.Code Ann. section 71-5-11(f) (Supp.2006).