CARLTON, J.,
for the Court:
¶ 1. The College Network appeals the Circuit Court of Hinds County’s decision to affirm the determination of the Mississippi Department of Employment Security Board of Review (Board of Review) that Monroe Stewart’s employment relationship constituted that of an employee of The College Network.
¶ 2. In 2005, Stewart signed a contract to work for The College Network as an independent contractor. Upon termination of his contract, Stewart filed a claim for unemployment benefits with the Mississippi Department of Employment Security (MDES), reporting that he constituted an employee of The College Network.[1] The MDES conducted an investigation and then concluded that Stewart constituted an employee of The College Network. The College Network appealed this decision and requested review by the administrative judge (AJ), who affirmed the determination of the MDES. On appeal, the Board of Review affirmed the AJ’s decision. The circuit court then affirmed the Board of Review’s decision. Finding the decision below arbitrary and capricious as an erro *742 neous application of the law to this case, we reverse and render.
FACTS
¶3. The College Network describes itself as offering for sale to individuals learning modules that are designed to “enable ... individuals] to test out of college courses and transfer those college courses to a university and complete their degree through that particular university.” The findings of the Board of Review reflect that The College Network employs approximately 180 persons who earn a salary, and The College Network also contracts with about 200 additional persons as independent contractors, who are paid commission only. The College Network provides for its employees workers’ compensation insurance, health insurance, and disability insurance. It -withholds Social Security tax, federal income tax, and state income tax. The College Network provides its employees a 401(k) retirement program, sick pay, and vacation pay. In contrast, the College Network provides no benefits of any kind to its independent contractors. As we will discuss further in our analysis section, independent contractors receive commissions, not a salary, and also determine how and when sales are obtained. Independent contractors can hire assistants, or sub-contractors, to conduct the contracted work of sales.
¶ 4. With respect to the facts in this case, the record reflects that Stewart answered an advertisement posted by The College Network on www.monster.com and Stewart was hired as an independent contractor to perform as a traveling salesman to sell products in Mississippi. The College Network states that Stewart worked as an independent contractor from January 26, 2005, until October 16, 2006. The College Network explained that Stewart set his own hours, used his own vehicle and gas, and provided his own home office. The record further reflects that The College Network provided no employee insurance or other benefits to Stewart due to his independent-contractor status, and that The College Network exercised no control or right to control over how and when Stewart performed the actual sales.
¶5. Notwithstanding his independent-contractor status, upon the termination of his relationship with The College Network, Stewart filed for unemployment benefits. As a result of his filing, MDES determined that no wages had been reported on behalf of Stewart by The College Network. Therefore, MDES conducted an investigation to determine whether Stewart constituted an employee or an independent contractor of The College Network. Without personally interviewing The College Network or Stewart, the MDES determined that an employer-employee relationship existed. Additionally, MDES ordered The College Network to report all wages paid to Stewart and others similarly situated in Mississippi, and MDES ordered that all applicable taxes for “employees” be paid upon these wages of Stewart and others similarly situated in Mississippi, notwithstanding their independent contractor status.
¶ 6. The College Network appealed this determination and requested review by the AJ. The AJ held a hearing on November 8, 2007, where Stewart testified, as did Noreen Prouty, a tax specialist testifying on behalf of MDES, and Glenn Cason, vice president of sales for The College Network. The AJ subsequently issued his opinion agreeing with the MDES’s decision and finding that Stewart constituted an employee of The College Network. The AJ acknowledged that although Stewart signed a contract with The College Network as an independent contractor, The College Network reserved the right to con *743 trol various aspects of Stewart’s job, and exercised that right. Specifically, the AJ concluded that Stewart “was required to report daily by internet, report weekly to his regional sales manager, and was trained at the company’s expense.” The AJ found these factors determinative of establishing an employee-employer relationship under the law, even though these acts failed to constitute the contracted work of conducting actual sales. Further, these acts failed to show that The College Network possessed any right to control the means, time, place, transportation, method, or even the personnel Stewart utilized to conduct the sales. The AJ added: “The ultimate right of control is the right to discharge without liability. The company exercised that right by discharging [Stewart].” The AJ’s conclusion failed to consider the totality of the various factors relative to the employer’s control or right to control, and also the totality of the applicable economic considerations in reaching the conclusion as to the existence of an employment relationship as established by common law and statute.
¶ 7. The College Network then requested review from the Board of Review, which upheld the AJ’s decision. The College Network appealed to the Hinds County Circuit Court, which affirmed the previous rulings. The College Network now appeals to this Court.
STANDARD OF REVIEW
¶ 8. Generally, our standard for reviewing the decision of an administrative agency is limited. Miss. Emp’t Sec. Comm’n v. PDN, Inc., 586 So.2d 838, 840 (Miss.1991). We will not disturb the Board of Review’s decision unless it: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) falls beyond the scope of authority granted to the agency, or (4) violates a constitutional right. EMC Enter., Inc. v. Miss. Dep’t of Emp’t Sec., 11 So.3d 146, 150 (¶ 9) (Miss.Ct.App.2009).
¶9. Regarding factual issues and findings of fact, Mississippi Code Annotated section 71-5-531 (Rev.2011) establishes that “the findings of the Board [of Review] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” With respect to disputes of material facts, we recognize that “a rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise.” Miss. Dep’t of Emp’t Sec. v. Harbin, 11 So.3d 137, 139 (¶ 5) (Miss.Ct.App.2009) (quoting Sprouse v. Miss. Emp’t Sec. Comm’n, 639 So.2d 901, 902 (Miss.1994)). This case, however, involves the construction of the facts and the details of employment and the interpretation of what constitutes employment, and the erroneous and arbitrary application of the law to this issue.
¶ 10. We also acknowledge, as stated in Senior Partners, Inc. v. Mississippi Employment Security Commission, 959 So.2d 44, 47 (¶ 7) (Miss.Ct.App.2006), that all employers under the Employment Security Act “are compelled to make contributions to the Employment Security Trust Fund ... based upon a percentage of all wages.” These contributions operate as a mandatory excise tax, and upon review of such, “every doubt as to their application must be resolved in favor of the taxpayer and strictly against the taxing power.” Id.; see Mozingo v. Miss. Emp’t Sec. Comm’n, 224 Miss. 375, 383-84, 80 So.2d 75, 78-79 (1955).
¶ 11. The College Network appeals the finding that it was an employer within the meaning of the Employment Security Act. Additionally, The College Network appeals the circuit court’s affirmance of the deci *744 sions of the AJ and Board of Review, arguing that the circuit court’s decision lacked supporting evidence and that the circuit court erred as a matter of law in applying the law to the facts and concluding that Stewart’s employment status constituted that of an employee, as opposed to an independent contractor. This case presents no material factual dispute as to what services Stewart performed; when and where the services would be performed; who would accomplish the services; or what physical acts The College Network could control. The dispute instead involves the application and construction of the law as applied to the undisputed facts.
¶ 12. Significant to our review of the issues in this case, in Mozingo, 224 Miss, at 386, 80 So.2d at 80, the Mississippi Supreme Court held that the rule that a decision of the Board of Review should prevail if supported by substantial evidence fails to apply where no material dispute exists in the evidence as to the actual operations of the parties and where the Board of Review’s decision “[is] not a ruling on the facts[,] but rather a construction of the facts whereby it erroneously determined the relationship of the parties.”
DISCUSSION
¶ 13. The College Network argues that the Board of Review erred in determining that Stewart constituted an employee, rather than an independent contractor, of The College Network. As acknowledged, this dispute does not involve the particular work or acts performed but whether, under the law, the physical acts of selling The College Network’s products establish the requirements necessary for an employee-employer relationship. The requirements to establish an employer-employee relationship are explained in section 71-5-11(J)(14) of the Mississippi Code Annotated (Supp.2012):
Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.
The relevant workers’ compensation statute, Mississippi Code Annotated section 71-3-3(r) (Rev.2011), defines independent contractor as:
[A]ny individual, firm or corporation who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work, and who has the right to employ and direct the outcome of the workers independent of the employer and free from any superior authority in the employer to say how the specified work shall be done or what the laborers shall do as the work progresses, one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains the result.
¶ 14. Section 71-5-ll(J)(14) directs us to employ common-law principles of master and servant, and the common law provides a flexible test. Miss. Emp’t Sec. Comm’n v. Total Care, Inc., 586 So.2d 834, 838 (Miss.1991). Reflecting the flexibility of the common-law test, we also recognize that the Mississippi Supreme Court has set forth the following factors to con *745 sider when determining whether an employee-employer or independent-contractor relationship exists:
(1) The extent of control exercised over the details of the work;
(2) Whether or not the one employed is engaged in a distinct occupation or business;
(3) The skill required in the particular occupation;
(4) Whether the employer supplies the tools and place of work for the person doing the work;
(5) The length of time for which the person is employed;
(6) The method of payment, whether by the time or by the job; and
(7) Whether or not the work is a part of the regular business of the employer.
Miss. Emp’t Sec. Comm’n v. PDN, Inc., 586 So.2d 838, 841-42 (Miss.1991) (citing Miss. Emp’t Sec. Comm’n v. Plumbing Wholesale Co., 219 Miss. 724, 732, 69 So.2d 814, 818 (1954)). A prominent factor in determining whether an individual is an employee or an independent contractor is “whether the employer has the right to exercise control over the work of the employee.” Estate of Dulaney v. Miss. Emp’t Sec. Comm’n, 805 So.2d 643, 646 (¶ 13) (Miss.Ct.App.2002). Stated differently, the relationship status depends upon the extent the putative employer controls, in substance and in detail, the work activities of the putative employee. Total Care, Inc., 586 So.2d at 837. The test for employee status is considered on a case-by-case basis. Id. In applying jurisprudence and statutory law, we note that the physical acts of the work performed must be evaluated in light of the employer’s right to control to determine the employment relationship. So, we turn to the evidence in this case, and the decision of the Board of Review.
¶ 15. In the present case, the Board of Review adopted the AJ’s opinion finding that an employer-employee relationship existed between The College Network and Stewart under section 71-5-ll(J)(14). During the hearing before the AJ, tax specialist Noreen Prouty testified on behalf of MDES. Prouty stated that MDES considered the following facts in its determination that Stewart constituted an employee of The College Network: Stewart operated under the company name; he was restricted to a sales territory; The College Network supplied the sales leads; Stewart had to report sales regularly; The College Network set the prices; The College Network provided the training, materials, and forms; The College Network approved all orders before a sale occurred; The College Network set advertising constraints; and either party could terminate the contract at any time without liability. The evidence in the record and the findings of the Board of Review fail to show that The College Network possessed the right to control, or controlled, the actual work of conducting sales. See PDN, 586 So.2d at 841-42. The physical acts and work identified by the decisions below pertain to before and after the actual work of conducting sales, which was at issue.
¶ 16. After the hearing, the AJ concluded in its findings of fact, as adopted by the Board of Review, that:
[Stewart] signed a contract with the company as an independent contractor.
[Stewart] had no investment in the company. He provided no tools or equipment. [The College Network] provided no tools or equipment. He furnished his own transportation. He determined his profit or loss solely on his sales. His loss was a result of not selling enough to cover expenses. His profit was based *746 upon sales exceeding the expenses incurred.
[Stewart] was paid commissions bimonthly. He could receive an advance on his own commission. He bought forms required by [The College Network] for the placement of orders. He was provided training in product knowledge. He was provided advertisements and modules for the sale to the purchaser. [The College Network] provided leads to [Stewart] for sales. He set a schedule of times he was willing to work. The company then set appointments for [Stewart] based on the leads in his area. [Stewart] reported to [The College Network] daily by internet. This was a follow[-]up on the leads provided by the company. [Stewart] reported to his regional manager on a weekly basis. The regional manager would follow up with [Stewart] about missed leads. He attended training meetings at the company’s expense on three occasions.
[Stewart] would provide the purchaser with the first of the modules. He submitted by UPS a copy of his enrollment register from which [The College Network] paid [Stewart] his commissions. The company would follow up with the other modules to the purchaser.
The company terminated the contract with [Stewart]. [Stewart] was paid commissions due at the end of a [ninety-]day period following the termination as stipulated in the contract.
Based on these findings, the Board of Review determined that The College Network had reserved the right to control Stewart, and that it had exercised that right. The Board of Review ultimately concluded that an employer-employee relationship existed between Stewart and The College Network.
¶ 17. As previously acknowledged, in reviewing the findings of the AJ and Board of Review, the record reflects a lack of evidence showing that The College Network controlled, or possessed a right to control, Stewart in the actual sales operations, including the means, place, time, methods, details, transportation, and even sales personnel. See Mozingo, 224 Miss, at 384, 80 So.2d at 79. The focus remains-on what work details and activities The College Network reserved the right to control, and the extent of any right to control these work activities, in light of the common law and factors set forth by the supreme court and statute. See Miss.Code Ann. §§ 71 — 5—11(J)(14) & 71-3-3(r); see also PDN, 586 So.2d at 841-42. The work and physical acts identified by the Board of Review fail to constitute the actual operation and conduction of sales, and pertain instead to activities before and after the sales work.
¶ 18. The College Network argues that the Board of Review’s decision lacks supporting substantial evidence and law. The College Network asserts that Stewart controlled his own hours; that he was not provided health insurance; and that he was not entitled to any other fringe benefits from the company. The College Network states that both The College Network and Stewart signed a contract declaring Stewart to be an independent contractor. We acknowledge that this Court has held that the mere fact that a contract declares a worker to be an independent contractor “is not conclusive as to whether the worker is an employee.” Senior Partners, Inc. v. Miss. Emp’t Sec. Comm’n, 959 So.2d 44, 49 (¶ 14) (Miss.Ct.App.2006). Therefore, “[i]t is not necessary for us to decide ... whether the contract taken alone discloses an employer-employee relationship.... [B]oth the contract of service and the facts of operation thereunder must be considered in determining the relation *747 ship.” Mozingo, 224 Miss, at 384-85, 80 So.2d at 79. As acknowledged in PDN, 586 So.2d at 838, courts consider the actual practice of the parties which supplements their written contract. See also Miss. Emp’t Sec. Comm’n v. Heidelberg Hotel Co., 211 Miss. 104, 116, 51 So.2d 47, 51 (Miss.1951) (Despite contract labeling orchestra members as employees, the supreme court found the hotel exercised no management over orchestra members when they performed the services specified in the contract.).
¶ 19. The College Network compares the present facts to the facts in Harbin, where this Court found the Board of Review’s determination that an employer-employee relationship existed arbitrary and capricious. Harbin, 11 So.3d at 142 (¶ 16). The Harbin claimant worked for a satellite-television-installation company as an installer. Id. at 140 (¶ 9). He set his own hours; he was paid per job/installation; he had no set time for his work schedule; and he provided all of his own tools. Id. at (¶¶ 10-12). The installers also used their own phones to contact customers to coordinate an installation time. Id. at 140-41 (¶ 12). The installers were required to provide their own independent-contractor insurance, though the claimant had not purchased it because he was in a “bind.” Id. at 141 (¶ 12). The claimant also had obtained specialized training prior to working for the company. Id. at 141-42 (¶ 15). Further, the installers could hire additional individuals to assist them in completing the installation if they so desired. Id. at 141 (¶ 15).
¶ 20. Similarly, Stewart possessed responsibility for providing his own automobile for travel, gas expenses, a home office, a computer, and a telephone. In applying the factors set forth by the supreme court and common law to this evidence, Stewart provided his own tools, place of work, equipment, and even sub-personnel, to operate and perform the actual work of conducting sales. See PDN, 586 So.2d at 841-42. He received a commission based on the amount of sales he made, and not an hourly wage. The College Network set no work hours for Stewart. Instead, he possessed the freedom to choose when he worked. Also, like in Harbin, Stewart possessed the freedom to hire someone to assist him in his work, and Stewart bore the duties to set compensation and pay sub-contractors himself. See also Mozingo, 224 Miss, at 381, 80 So.2d at 78. Again, in applying the factors set forth in common law and statute, Stewart set his own hours; received a commission by the sale conducted, and not an hourly wage; and The College Network possessed no right of control over how, when, or by what means he conducted the sales. See id. The law as applied to these facts shows Stewart constituted an independent contractor.
¶ 21. However, after hearing testimony, the AJ concluded differently, finding that Stewart constituted an employee because he possessed no investment in the company and because he provided no tools or equipment. This conclusion lacks a basis in the evidence since Stewart provided his own tools and resources, including his computer, telephone, skills of salesmanship, cost of travel, home office, transportation, personnel, and earned commissions (as opposed to an hourly wage). The law, when considering the totality of the economic relationship displayed by the evidence in this case, shows that Stewart engaged in sales as an independent contractor. Stewart contracted to perform the physical operations of sales as an independent contractor for The College Network, and Stewart alone controlled the physical acts, details, and operation of sales. Stewart possessed the right to decide who conducted the physical operations of the sales with potential buyers. Stewart could hire and *748 set wages for sub-contractors, and Stewart alone bore the obligation to pay any subcontractor wages. Significant to the application of the law, including the common-law factors employed in determining the nature of the employment relationship, the record shows that The College Network retained no control to even require Stewart to personally conduct the sales or control over the details of how or when the sales were conducted. See Heidelberg Hotel, 211 Miss. at 115, 51 So.2d at 51. The College Network paid Stewart a commission by the job.
¶22. The AJ’s findings reflect misplaced reliance upon isolated acts occurring before or after the physical operation of conducting the sales, and the conclusions of the AJ rested on isolated acts as opposed to the totality of the applicable economic operations. Total Care, Inc., 586 So.2d at 837. Stewart reported the sales after their completion and gained information about potential new sales leads prior to the work of conducting these sales. As noted, Stewart bore no obligation to actually conduct any sales or follow up on suggested leads. MDES argues that the present case is distinguishable from the facts of Harbin, asserting that Stewart performs daily, not episodically, and that he personally performed the essential services of The College Network, as advertised by the company.
¶ 23. In this case, no material dispute exists as to the operation of the parties; rather, the dispute pertains to the application of the law to the facts and the construction of the facts below. See Mozingo, 224 Miss, at 386, 80 So.2d at 80. After careful scrutiny, we find the Board of Review arbitrarily erred in applying the law to the facts and arbitrarily erred in its construction of the facts. See id. The decision below also lacks substantial evidence in its finding that Stewart provided no tools, resources, or investment in the company. The decision below also lacks substantial evidence since The College Network failed to exercise control, nor did it possess a right of control over the details of the actual sales work at issue. The record therefore fails to support the Board of Review’s conclusion that Stewart constituted an employee of The College Network. Instead, we find that the law as applied to the evidence in the record supports that Stewart constituted an independent contractor.[2] Finding the Board of Review’s decision arbitrary and capricious due to an erroneous application of the law to the facts, we reverse and render the circuit court’s judgment.
¶ 24. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. MAXWELL, J„ CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. See Miss.Code Ann. § 71-5-101 (Rev.2011) (establishing Mississippi Department of Employment Security); Miss. Code Ann. § 71-5-11(F) (Supp.2012).

. Mozingo, 224 Miss, at 383-84, 80 So.2d at 78-79 (law as applied to facts is construed in favor of taxpayer, and not in favor of taxing power).