CARLTON, J.,
for the Court:
¶ 1. MEDS Inc., doing business as APPS Para Medical Services (APPS), appeals the Hinds County Circuit Court’s decision to affirm the determination of the Mississippi Department of Employment Security Board of Review (Board of Review) that Anita Murphy’s employment relationship constituted that of an employee of APPS. The record also shows the administrative law judge (ALJ) and Board of Review found that not only Murphy, but also those similarly situated, constituted employees of APPS. Upon review, we find that the Board of Review’s decision is arbitrary due to an erroneous application of the law to the facts and is not supported by substantial evidence. We therefore reverse the Board of Review’s determination that Murphy constituted an employee of APPS, and, in applying the law to the undisputed facts of this case, we render a judgment finding that Murphy’s employment status constituted that of an independent contractor.
FACTS
¶ 2. On July 24, 2008, Murphy filed a claim for unemployment benefits with the Mississippi Department of Employment Security (MDES) after being released from, employment with The Hattiesburg Clinic. In her claim for benefits, Murphy listed APPS, a paramedical company that provides medical testing for individuals seeking insurance coverage, as her most recent employer. Murphy is a certified phlebotomist,[1] and her services were con *150 tracted for by APPS’s predecessor, Physicians Inc. The record reflects that APPS works with various insurance companies that offer life-insurance products. Several life-insurance companies require that certain medical tests be performed in order to issue life-insurance contracts. APPS contracts with nurses, doctors, and technicians to provide these medical tests for the various insurance companies.
¶ 3. After MDES found no wages recorded for Murphy, field representative Eldridge Rose conducted an investigation for MDES. After concluding the investigation, the chief of the Tax Department, Veronica England, issued the Tax Department’s decision finding that APPS constituted an “employer,” as defined by Mississippi Code Annotated section 71-5-11 (Supp.2013). MDES accordingly determined that Murphy’s wages should be reported and taxes paid. APPS appealed the Tax Department’s decision.
¶ 4. On February 20, 2009, the ALJ conducted a telephonic hearing. During the hearing, both parties presented evidence, and the ALJ heard testimony from Murphy; Charlene Mitchell, regional director of APPS; and Noreen Prouty, status specialist with MDES. On November 17, 2009, the ALJ affirmed the Tax Department’s determination and held that “an employer-employee relationship did exist between [APPS] and [Murphy] as defined in section 71 — 5—11 (I) (14). ” APPS again appealed.
¶ 5. On February 16, 2010, the Board of Review summarily affirmed the ALJ’s decision. APPS appealed to the Hinds County Circuit Court, which summarily affirmed the decision of the Board of Review. This appeal followed.
STANDARD OF REVIEW
¶ 6. Our standard for reviewing the decision of an administrative agency is limited. Miss. Emp’t Sec. Comm’n v. PDN Inc., 586 So.2d 838, 840 (Miss.1991). This Court will not disturb the Board of Review’s decision unless it: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) falls beyond the scope of authority granted to the agency, or (4) violates a constitutional right. EMC Enter. Inc. v. Miss. Dep’t of Emp’t Sec., 11 So.3d 146, 150 (¶ 9) (Miss.Ct.App.2009); see also URCCC 5.03 (scope of appeals from administrative agencies).
¶ 7. Regarding factual issues and findings of fact, Mississippi Code Annotated section 71-5-531 (Rev.2011) establishes that “the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” With respect to disputes of material facts, we recognize that “a rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise.” Miss. Dep’t of Emp’t Sec. v. Harbin, 11 So.3d 137, 139 (¶ 5) (Miss.Ct.App.2009) (quoting Miss. Dep’t of Emp’t Sec. v. Good Samaritan Pers. Servs., 996 So.2d 809, 812 (¶ 6) (Miss.Ct.App.2008)). This case, however, presents no dispute of material fact; rather, it presents a question as to the application of the law to the undisputed facts.
¶ 8. We review questions of law de novo. See Donald v. Amoco Prod. Co., 735 So.2d 161, 165 (¶ 7) (Miss.1999). Also, in Senior Partners Inc. v. Mississippi Employment Security Commission, 959 So.2d 44, 47 (¶ 7) (Miss.Ct.App.2006), this Court acknowledged that all employers under the Employment Security Act “are compelled to make contributions to the Employment Security Trust Fund ... based upon a *151 percentage of all wages.” These contributions operate as a mandatory excise tax, and upon review of such, “every doubt as to their application must be resolved in favor of the taxpayer and strictly against the taxing power.” Id.; see Mozingo v. Miss. Emp’t Sec. Comm’n., 224 Miss. 875, 388-84, 80 So.2d 75, 78-79 (1955).
DISCUSSION
¶ 9. APPS argues that Murphy constituted an independent contractor, and not an employee, of APPS. As acknowledged, the record shows no disputes as to material facts of the case; rather, the parties disagree as to the application of the relevant law to these particular facts. Thus, we turn to the law applicable to the determination in this case. The requirements to establish an employer-employee relationship are explained in section 71-5-11(I)(14) of the Mississippi Code Annotated (Supp.2013):
Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.
¶ 10. The relevant workers’ compensation statute, Mississippi Code Annotated section 71-3-3(r) (Rev.2011), defines independent contractor as:
[A]ny individual, firm or corporation who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work, and who has the right to employ and direct the outcome of the workers independent of the employer and free from any superior authority in the employer to say how the specified work shall be done or what the laborers shall do as the work progresses, one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains the result.
¶ 11. In reviewing an application of the law in jurisprudence, the recent case of College Network v. Mississippi Department of Employment Security, 114 So.3d 740, 744 (¶ 14) (Miss.Ct.App.2013) recognized that “[sjection 71-5-11[ (I) ](14) directs us to employ common-law principles of master and servant, and the common law provides a flexible test.” (Citing Miss. Emp’t Sec. Comm’n v. Total Care Inc., 586 So.2d 834, 838 (Miss.1991)). We also recognize that the Mississippi Supreme Court has provided factors to consider when determining whether an employee-employer or independent-contractor relationship exists:
(1) The extent of control exercised over the details of the work;
(2) Whether or not the one employed is engaged in a distinct occupation or business;
(3) The skill required in the particular occupation;
(4) Whether the employer supplies the tools and place of work for the person doing the work;
(5) The length of time for which the person is employed;
(6) The method of payment, whether by the time or by the job; and
(7) Whether or not the work is a part of the regular business of the employer.
*152 PDN, 586 So.2d at 841-42 (citing Miss. Emp’t See. Comm’n v. Plumbing Wholesale Co., 219 Miss. 724, 732, 69 So.2d 814, 818 (1954)).
¶ 12. The relevant law reflects that a “central issue” to consider when determining whether an individual is an employee or an independent contractor is “whether the employer has the right to exercise control over the work of the employee.” Estate of Dulaney v. Miss. Emp’t Sec. Comm’n, 805 So.2d 643, 646 (¶ 13) (Miss.Ct.App.2002). “Stated differently, the relationship status depends upon the extent the putative employer controls, in substance and in detail, the work activities of the putative employee.” College Network, 114 So.3d at 745 (¶ 14) (citation omitted). We consider the test for employee status based on the law applied to the facts of each case. Id. Additionally, we evaluate the physical acts of the work performed in light of the employer’s right of control to determine the employment relationship. Id.
¶ 13. With respect to the determination in this case, MDES argues that Murphy constituted an employee of APPS. MDES states that Murphy’s tasks are the essential part of APPS’s regular business. In support of the determination that Murphy constituted an employee of APPS, the ALJ explained:
[Murphy] was responsible for blood draws and collecting medical history information to be forwarded to the laboratories to be sent to the insurance companies. [Murphy] performed her services under the company’s name. [APPS] set the wages for the services performed by [Murphy]. [Murphy] had to report to work location[s] designated by [APPS] and/or the individuals applying for insurance coverage. . [Murphy] was required to keep in contact and/or report to the company through the computer, that she either accepted or declined the assignments, made appointments with the individual applying for insurance coverage, and when she completed the case. [APPS] did provide some of the materials and equipment for [Murphy] to use in performing her services. [APPS] required that [Murphy] perform the services personally. [APPS] and [Murphy] both could terminate the services without any liabilities.
¶ 14. APPS argues, however, that Murphy constituted an independent contractor rather than an employee, and1 APPS refers to the confidentiality agreement and contract Murphy signed, which states Murphy “shall in no way be considered an employee” of APPS. During the hearing, Murphy asserts that she may have “misinterpreted” some of the questions on the MDES independent-contractor questionnaire, explaining “I’ve worked for [APPS] so long, I guess in my mind I felt like I was an employee. I guess it was just misinterpreted on my part that all of this got started to begin with.” Despite her asserted belief that she was an employee, the record interestingly reflects that the “Confidentiality Agreement and Contract” she signed in 2004 provided that her taxes and withholding would be in accordance with that of an independent contractor, and not an employee. The record also shows that APPS provided Murphy a 1099 tax form each year, reflecting her status as an independent contractor.
¶ 15. We indeed acknowledge this Court has held that the mere fact that a contract declares a worker to be an independent contractor “is not conclusive as to whether the worker is an employee.” Senior Partners, 959 So.2d at 49 (¶ 14). As a result, “[i]t is not necessary for us to decide ... whether the contract taken alone discloses an employer-employee relationship .... [B]oth the contract of service *153 and the facts of operation thereunder must be considered in determining the relationship.” Mozingo, 224 Miss, at 384-85, 80 So.2d at 79. In so doing, courts consider the actual practice of the parties, which supplements their written contract. See PDN, 586 So.2d at 838. Thus, in determining employment status, we first turn to examine the actual practice of the parties and the “Confidentiality Agreement and Contract.”
¶ 16. The “Confidentiality Agreement and Contract” reflects that APPS contracted with Murphy as a paramedical-examiner vendor. In the contract, APPS agreed to engage Murphy as a venipuncturist. The record and course of dealings show the tasks involved entailed driving to an insurance applicant’s home to draw blood, to collect medical information, and to document medical histories from the future insurance applicants, for which Murphy received compensation. The record further shows that APPS contracted similarly with four other nurses in the Hattiesburg area to also serve as such contractors when APPS received an order from an insurance company for an insurance-application exam of some future applicant.
¶ 17. With respect to APPS’s operation, the transcript from the telephonic hearing before the ALJ contains Mitchell’s testimony that Murphy and other contractors with APPS were not required to wear or carry anything identifying them as APPS employees. Murphy provided that her attire was to be professional dress or scrubs. Mitchell also explained that APPS never required Murphy to call in to APPS to account for her time or whereabouts or check to see if any assignments or work orders were available from insurance companies APPS represented.
¶ 18. Additionally, with respect to the facts of the operation, the record contains no evidence that APPS actually supervised or possessed the right to supervise Murphy in the performance of her paramedical-examiner duties, i.e., drawing blood, taking medical histories, or performing other paramedical tasks. The record also reflects that APPS provided no oversight or supervision regarding the standard of medical care exercised by Murphy in performing the paramedical-examiner services relating to each of the work orders. Thus, APPS exercised no training for, nor made a quality review of, her paramedical skills, medical knowledge, or medical documentation. The record also shows that Murphy controlled how much time she spent per work order, controlled her own efficiency, and controlled her own scheduling. She controlled her own time in completing the work orders, as long as she completed medical tasks required by the work order in the time specified therein, which was normally forty-eight hours. The record shows that the estimated hourly wage calculated by the ALJ lacks an evidentiary basis.
¶ 19. The hearing transcript also reflects the online posting procedure APPS used to offer individual jobs or work orders. APPS posted the insurance-medical-examiner jobs on the internet, and Murphy testified that she possessed the authority to accept or decline any of the posted work orders. As acknowledged, once Murphy accepted a work order, the work order required completion within a specific time period, forty-eight hours. APPS possessed no right to cancel the order without being in breach after acceptance of a work order by Murphy. See also DC Gen. Contractors, Inc. v. Slay Steel, Inc., 109 So.3d 577, 582-83 (¶¶ 13-15) (Miss.Ct.App.2013). Upon acceptance of a work order, Murphy explained, she normally possessed forty-eight hours to perform medical-testing services on applicants for insurance, as identified in the order. Additionally, Murphy *154 testified that with the exception of the EKG machine, the “Confidentiality Agreement and Contract” required Murphy to provide “her own equipment and materials for performing such services” at the applicant’s business or home, or she “may elect to purchase from [APPS] materials and equipment for the furnishing of such services.”
¶ 20. As previously acknowledged, Murphy possessed specialized training, obtained prior to her employment with APPS, to perform the medical-examiner tasks required by the identified medical tests, to assess vital signs, and to provide the necessary medical documentation. The “Confidentiality Agreement and Contract” states that APPS would provide no paramedical-examiner training to Murphy; instead, APPS provided her training only as to how to process and complete the forms and reports required by the various insurance companies that APPS represented. The evidence of the actual practice of the parties in the record confirms that APPS provided no medical-examiner training to Murphy. As in Harbin, 11 So.3d at 142 (¶ 15), and College Network, 114 So.3d at 747 (¶ 19), Murphy’s preexisting expertise and qualifications as a phlebotomist or paramedical examiner indicate independent-contractor status.
¶ 21. We acknowledge that the mere fact that a contract declares the status of a worker to be that of an independent contractor is not conclusive in determining employment status. We also similarly recognize that the mere identification of a document as a contract in its heading, or its labeling, does not establish the document as an enforceable employment contract. The text within the four corners of the document executed by the parties must be examined to determine if the document contains the essential elements for contract enforceability. In Cook v. Wallott, — So.3d -, - (¶ 44) (Miss.Ct.App.2013),[2] this Court stated that “the elements of a valid contract are: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with the legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.”
¶ 22. In reviewing this document herein, we disagree with the conclusion of the ALJ, Board of Review, and circuit court that the “Confidentiality Agreement and Contract” constituted an enforceable contract, much less an enforceable “employment” contract. The text of this agreement lacks the essential elements necessary for contract formation. The gravity of the erroneous conclusion as to its enforceability warrants further discussion, since the decision below rests to some extent upon a finding that this document reflects Murphy’s status as that of an employee. Therefore, we now turn to address enforceability of this agreement.
¶23. This document allowed APPS to offer work orders to multiple providers, and this document provided that when Murphy accepted future work, the parties would agree on a fee from time to time.[3] *155 To establish a lack of enforceability on its own, this document must contain a method for calculating the compensation or fee. This document instead reflected that Murphy would receive future payments from time to time, upon completion of performance of the future work orders, when and if accepted by her, for the fees specified in the respective future orders. The factual findings of the decision below nonetheless erroneously found that Murphy’s compensation indicated an employee status. However, the purported contract identifies no method of compensation and lacks enforceability on its own merits. A review of the actual conduct of the parties shows that the purported contract became enforceable only upon the subsequent acceptance of a work order - that contained the required contract terms.[4] This Court has also repeatedly held that payment per job, like the work orders in this case, rather than payment of a salary, indicates an independent-contractor status. See College Network, 114 So.3d at 748 (¶ 21); Harbin, 11 So.3d 137 at (¶ 15); Miss. Dep’t of Emp’t Sec. v. Prod. Connections LLC, 963 So.2d 1185, 1189 (¶ 11) (Miss.Ct.App.2007).
¶ 24. Mississippi jurisprudence clearly provides that a contract is unenforceable where the price has not been stated with specificity. See Rotenberry v. Hooker, 864 So.2d 266, 270 (¶ 13) (Miss.2003). A contract is unenforceable if the material terms are not sufficiently defined. Id. In Crow v. Crow’s Sports Center Inc., 119 So.3d 352, 356 (¶ 11) (Miss.Ct.App.2012) (citing Duke v. Whatley, 580 So.2d 1267, 1273-74 (Miss.1991)), this Court acknowledged that “[a] contract’s terms must be definite, and without some written evidence of purchase price or a method of determining a purchase price, the contract is a mere memorandum of intent.” The supreme court applies an objective standard to determining definiteness. See Denbury Onshore LLC v. Precision Welding Inc., 98 So.3d 449, 454-55 (¶ 19) (Miss.2012).
¶25. The decision below relies upon this purported contract to find that either party could terminate the contract “at will” and without any liabilities. The decision below concluded this alleged right to terminate “at will” indicated Murphy’s status as an employee. The decision below, however, failed to ascertain that the purported “Confidentiality Agreement and Contract” lacked enforceability, and that an enforceable contract arose only upon the acceptance of the work orders. The decision below further failed to assess whether the individual work orders could be terminated “at will” by either party after acceptance by Murphy. The record shows once Murphy accepted an order, APPS possessed no right to terminate Murphy’s services for that order without being in breach.[5] Moreover, the decision below failed to address, relative to contract enforceability or termination, that no guarantee of any further or future work or work orders existed after Murphy completed a work order. Therefore, after accepting and completing a work order, no contracted .work remained to terminate. Moreover, Murphy possessed no obligation to accept future work orders, and APPS similarly possessed no duty to offer further orders to her. See Prod. Connections, 963 So.2d at 1189 (¶ 11). In summary, the “Confidentiality Agreement and Contract” provided *156 Murphy no right to a contract or to work, but rather only provided Murphy the right to be eligible, along with other eligible paramedical examiners, to accept the offers set forth in future posted individual work orders.[6] This “Confidentiality Agreement and Contract” also failed to specify the particular paramedical examination services to be performed by Murphy, and failed to identify when, or where, or upon what insurance applicant, such services were to be performed in the future. Additionally, the “Confidentiality Agreement and Contract” lacks even the basic element of consideration, further evidencing a lack of enforceability.[7] See Restatement (Second) of Contracts § 72 (1981) (formation and consideration). Consideration requires an element of exchange of performance for a promise. Id.
¶26. The “Confidentiality Agreement and Contract,” along with the facts in the record, shows that this purported agreement constituted an open agreement offered to multiple paramedical examiners, and shows that this document, standing on its own terms, lacked enforceability. The circuit court erred in finding this purported contract allowed at-will termination by either party and also erred in holding that Murphy’s status constituted that of an employee.
¶ 27. As acknowledged, this open agreement failed to provide compensation for the contracted services, and lacked consideration. As such, this agreement was unenforceable as to both parties, and without an enforceable contract, no set of facts can support a claim for breach. See Cook, — So.3d-, at-(¶ 44); Murray Envelope Corp. v. Atlas Envelope Corp., 851 So.2d 426, 429 (¶ 8) (Miss.Ct. App.2003).
¶ 28. With respect to termination, Murphy signed this purported contract years before in 2004, and the document contained no termination date or provision. However, upon acceptance of a work order by Murphy from APPS, time was of the essence to perform the work order within forty-eight hours. APPS therefore possessed no right to unilaterally terminate an order after its offer and then its acceptance by Murphy, without being in breach of the contract terms.[8] See Ferrara v. Walters, 919 So.2d 876, 885 (¶ 25) (Miss.2005); Gunn v. Heggins, 964 So.2d 586, 592 (¶ 11) (Miss.Ct.App.2007) (for time to be of the essence, “the contract must expressly state that time is of the essence or there must be a clear indication that the parties intended for time to be of the essence”).
¶ 29. Based upon the foregoing, the evidence in the record fails to support the decision below that the employment relationship between APPS and Murphy[9] constituted that of an employee and employer. We therefore find the decision of the Board of Review arbitrary due to an erroneous application of the relevant law to the undisputed facts herein.[10] Substantial and credible evidence in the record, and the applicable law, supports the determination that Murphy constituted an. independent contractor. We therefore reverse and render the circuit court’s judgment as to Mur *157 phy’s employment status and as to others similarly situated.
¶ 30. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The record and oral argument show Murphy was certified by a private association and *150 that Mississippi requires no state licensure for phlebotomists.

. We recognize that this opinion has not been released for publication in the permanent law reports, and until released, it is subject to revision or withdrawal.

. The record shows that when an insurance company placed an order with APPS, APPS offered the work orders for the needed paramedical services to the eligible paramedical examiners by communicating the offer online. If one of the multiple eligible examiners accepts the work order offered, and performs the services in accordance with the terms of the work order, then the examiner is paid the amount set forth for that order. Murphy, along with the other examiners, possessed the authority to accept or decline any of the work orders.

. See Mid-South Packers Inc. v. Shoney’s Inc., 761 F.2d 1117, 1120 (5th Cir.1985).

. See Miss.Code Ann. § 75-2-311 (Rev.2002) (contracts that leave unspecified terms); and see generally Mid-South Packers Inc., 761 F.2d at 1120 (individual orders that are accepted are each separate contracts); Quick & Grice v. Ashley, 227 Miss. 273, 276-77, 86 So.2d 40, 41 (1956); DC General Contractors, 109 So.3d at 582-83 (¶¶ 13-15).

. See Mid-South Packers, 761 F.2d at 1120 (5th Cir.1985) (individual orders that are accepted are each separate contracts).

. See Rotenberry, 864 So.2d at 270 (¶ 13).

. See generally Ladner v. Pigg, 919 So.2d 100, 102 (¶ 7) (Miss.Ct.App.2005).

. And others with similar open, unenforceable agreements.

. EMC, 11 So.3d at 150 (¶ 9); see also URCCC 5.03 (scope of appeals from administrative agencies).